AUGUSTUS M. HODGE, Executor, etc., et al., Appellants, v. RICHARD SLOAN, Respondent.

A covenant in restraint of trade is valid if it imposes no restriction upon one party, which is not beneficial to the other, and was induced by a consideration which made it reasonable for the parties to enter into, and the covenant will be enforced if a disregard thereof by the covenantor will work injury to the covenantee.

Where a grantee binds himself by a covenant in his deed, limiting the use of the land purchase in a particular manner so as not to interfere with the trade or business of the grantor, and the covenant is valid as between the parties, it is also binding upon and may be enforced against a grantee of the covenantor, taking title with notice of the restriction; and this, although the assignees of the covenantor are not mentioned or referred to. It is not necessary that the covenant should be one technically running with the land; it is sufficient that the purchaser has notice of it.

N. was the owner of certain lands containing deposits of building sand and the sale of the sand constituted his only business. S. offered to purchase a small parcel of the land, but N. declined to sell on the ground that it would interfere with his business. S. agreed to purchase, covenanting not to sell any sand off from the parcel. N. thereupon sold and conveyed, his deed containing such a covenant on the part of the grantee. S. subsequently conveyed by warranty deed, to defendant, without covenants on the part of the latter, who, however, had notice before taking his deed of the covenant in the deed to his grantor. Defendant opened a pit on his land, sold sand therefrom and declared that he should

continue to sell notwithstanding such covenant. *Held* (ANDREWS and EARL, JJ., dissenting), that an action was maintainable to restrain such sale. *Brewer* v. *Marshall* (4 C. E. Green, N. J. Eq. 537) distinguished.

(Argued July 1, 1887; decided October 28, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 6, 1884, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the defendant from selling sand taken from land conveyed by the plaintiff to John D. Sloan, and by him to the defendant, in violation of a covenant contained in the deed to John D. Sloan, and of which the defendant, when he bought, had notice. The complaint was dismissed. After an appeal to this court from the judgment of General Term, the plaintiff died and his executor was substituted as appellant.

There is no controversy in regard to the findings of the trial judge as to the facts, and from those it appears that on the 9th day of May, 1868, Edward Null, the original plaintiff, and afterwards the appellants' testator, was the owner in fee of about forty acres of land in the village of Canajoharie, containing deposits of building sand. These he opened and the sale therefrom at that time and ever since constituted his only business. His customers came from Canajoharie, Palatine Bridge, Amsterdam and the city of Utica. Sales averaged about ten loads each day. This business being well established, one John D. Sloan applied to him for a small parcel of the land being about one-half acre, as described in the complaint, but plaintiff declined to sell on the ground that by such sale he would be injuring his business and depriving himself of his living, and upon such objection being made, Sloan agreed to purchase the land and pay therefor $650, and stipulate not to sell any sand off said land, and pursuant to such negotiation the plaintiff executed a written contract of sale of said parcel of land to him for such consideration, and containing a covenant to that effect, and Sloan afterwards

having fully paid the consideration, plaintiff, by warranty deed, conveyed the contracted land to him. In that deed, immediately after the description was inserted the covenant. contained in such contract, viz.: "Said party of the second part hereby agreeing not to sell any sand off of said premises." The deed was duly recorded in the Montgomery county clerk's office on March 30, 1875. Sloan accepted the contract and deed, and possessed and occupied the land thereunder. On the 26th day of March, 1881, by warranty deed, John D. Sloan conveyed the last mentioned premises to his son, Richard Sloan, the defendant. That deed contained no exception, res- ervation or condition, and no reference to the covenant con- tained in the deed to John D. Sloan, but the defendant, before and at the time of taking the conveyance, had full knowledge. of such covenant and that it was contained in the deed to his. grantor. With this notice he entered upon the described premises, opened a bank or pit and sold sand therefrom, and notwithstanding the remonstrances of the plaintiff and his request to observe and keep the covenant of John D. Sloan, the defendant declared that he should continue to sell the sand notwithstanding such covenant.

The trial judge also found that the plaintiff "at the time of the sale of said land to John D. Sloan had and ever since then has had, and now has upon his said land retained by him suf- ficient sand to supply the demand for sand for local use, and to be transported to a distance and used, and that such supply will be sufficient for all time to come, and plaintiff during all such time has had facilities to supply the demand for such sand, and has fully supplied the same, and desires to continue the sale of sand and to fully supply such demand for the same in future."

And further, that the covenant was inserted in the deed from the plaintiff to John D. Sloan to prevent competition in the plaintiff's business of selling sand. But, as conclusions of law he held, "1st. That the clause inserted in the deed from the plaintiff to John D. Sloan was not an exception, reservation or condition, but was a covenant, the deed having been accepted and the land therein described

held by virtue thereof by the said John D. Sloan, such covenant was his covenant not to sell sand off the premises granted, and the same having been incorporated in the instrument by which title to the land was acquired, if not void as against public policy, ran with the land and bound the grantees and assigns of said Sloan; 2d. Said covenant was in restraint of trade, contrary to public policy and void, and hence dismissed the complaint."

*D. S. Morrel* for appellants. A party to an invalid contract will not be permitted to avail himself of its invalidity, unless he restores the consideration to the other party. ( *Warren* v. *Jones*, 51 Me. 146; Benj. on Sales [Burnett's 4th Am. ed.], § 521, note; *Hunt* v. *Turner*, 9 Texas, 385.) The defendant is in no better condition than his father, for he took the title of the lot from his father with full knowledge of the covenant in question. ( *Trustees* v. *Lynch*, 70 N. Y. 441, 449.) The restraint contracted for is not of such character as to be condemned as violating the rules of law. ( *Dia. M. Co.* v. *Roeber*, 35 Hun, 421; *Hubbard* v. *Miller*, 27 Mich. 15, 19; *Rousillon* v. *Rousillon*, L. R. 14 Ch. D. 351; *Morse, etc., Co.* v. *Morse*, 103 Mass. 73; *Leather C. Co.* v. *Lossont*, L. R. 9 Eq. 345; *Trustees* v. *Lynch*, 70 N. Y. 446.) The covenant must be construed with reference to the testator's business, which it was designed to protect and the surrounding circumstances, and not as imposing the general restraint its language imports. (14 West. Rep. 630; *Morse T. D. & M. Co.* v. *Morse*, 103 Mass. 76; *Ingram* v. *Stiff*, 5 Jur. [N. S.] 947; *D. M. Co.* v. *Roeber*, 35 Hun, 421; *Rousillon* v. *Rousillon*, L. R. 14 Ch. D. 351.) The covenant in this suit relates to, and is attached to the land conveyed, and runs with it. ( *Norman* v. *Wells*, 17 Wend. 136; *Ver Plank* v. *Wright*, id. 506; *Van Rensselaer* v. *A. & W. S. Co.*, 1 T. & C. 625; *Broner* v. *Jones*, 23 Barb. 160; 1 Washb. on R. Prop. 495, 504; 2 id. 286, 288.) This covenant is not inherently vicious. ( *Hubbard* v. *Miller*, 27 Mich. 15, 19; 3 N. Y. S. C. [T. & C.] 622; *Trustees* v. *Lynch*, 70 N. Y. 446; *Post* v. *Weil*, 8 Hun, 418.)

*H. L. Huston* for respondent. The clause in question is repugnant to the grant. It prohibits the most natural use of the very thing granted. (*Hathaway* v. *Payne*, 34 N. Y. 116; *Hill* v. *Priestly*, 52 id. 635; *Craig* v. *Wells*, 11 id. 322.) If the clause be regarded as a covenant, still it does not run, or purport to run with the land, nor bind, nor purport to bind, the assigns of the covenantor. (*Brewer* v. *Marshall*, 4 C. E. Green, 545; *Norcross* v. *James*, 2 East. Rep. 709 [Mass.].) Covenants running with the land, as between vendor and purchaser, are not favored in law. (1 B. & H. Com. 731; *Keppell* v. *Bailey*, 2 M. & K. 517: *Norman* v. *Wells*, 17 Wend. 153, 154.) Equity will not in such a case charge the conscience of a party with the observance of the covenant of his grantor. (*Brewer* v. *Marshall*, 4 C. E. Green, 545; *Case* v. *Haight*, 3 Wend. 635.) The alleged covenant is essentially vicious, as contravening public policy and being in unlawful restraint of trade. (*Chappel* v. *Brockway*, 21 Wend. 158; *Dunlap* v. *Gregory*, 10 N. Y. 244; *Weller* v. *Hersee*, 10 Hun, 433; *Sar. Co. Bk.* v. *King*, 44 N. Y. 87; *Curtis* v. *Gokey*, 68 id. 300; *Ross* v. *Sadgbeer*, 21 Wend. 166; *Fisher* v. *Bush*, 35 Hun, 645; *Maier* v. *Hornan*, 4 Daly, 168; *Lawrence* v. *Kidder*, 10 Barb. 641; *Arnot* v. *P. & E. Coal Co.*, 68 N. Y. 558; *Nobles* v. *Bates*, 7 Cow. 306; *Van Marter* v. *Babcock*, 23 Barb. 633; *Smith* v. *Smith*, 4 Wend. 407; *Noah* v. *Webb*, 1 Edw. 604; *Sanders* v. *Hoffman*, 64 N. Y. 248; *Mott* v. *Mott*, 11 Barb. 127; *Brewer* v. *Marshall*, 4 C. E. Green, 538.)

Danforth, J. The conclusion of the trial court is against our ideas of natural justice, for it takes from one party an advantage which he refused to sell, and secures to the other without price a privilege which his grantor was unable to buy. Nor do we find that this denial of private right is required by any rule of public policy. Assuming with the respondent that the covenant is in restraint of trade, it is still valid if it imposes no restriction upon one party which is not beneficial to the other, and was induced by

a consideration which made it reasonable for the parties to enter into it, or in other words, if it was a proper and useful contract, or such as could not be disregarded without injury to a fair contractor. . This is the doctrine of *Chappel* v. *Brockway* (21 Wend. 157), and *Ross* v. *Sadgbeer* (id. 166), derived by a learned court from the leading case of *Mitchel* v. *Reynolds* (1 P. Wms. 181), and an examination of subsequent decisions. It is also so amplified and discussed in a case just decided by this court (*Diamond Match Co.* v. *Roeber*), opinion by ANDREWS, J. (106 N. Y. 473), as to make any elaboration of the general rule quite superfluous.

The subject of the contract at the bottom of this controversy was a piece of land which Sloan wanted to buy and which the plaintiff was willing to sell provided it should not be made an instrument for the destruction of his means of livelihood or detrimental to his business. The principle which favors freedom of trade requires that every man shall be at liberty to work for himself, and shall not deprive himself or the State of the benefit of his industry by any contract that he enters into. The same principle must justify a party in withholding from market the tools, or instruments, or means by which he gains the support of his family, or if, as in the case before us, the instrument or means are susceptible of several uses, one of which will work mischief to himself by the loss or impairment of his livelihood, there is no reason of public policy which requires him upon a sale of the instrument to consent to that use, or prohibits him from binding his vendee against it.

We see nothing unreasonable in the restriction which the grantee imposed upon himself. He was not a dealer in sand. He wanted to buy the land on the best terms and in the most advantageous way, and in order to do this it was necessary that he should preclude himself from so using it as that by its means he should enter into competition with the vendor. I cannot find that such a covenant contravenes any rule of public policy, nor that it is incapable of being enforced in a court of equity. It stands upon a good consideration, and is not

larger than is necessary for the protection of the covenantee in the enjoyment of his business.

But the question presented is, upon the conceded facts, really one of individual right with which the question of public policy has little if anything to do.

Parties competent to contract have contracted, the one to sell a portion of his land, but only upon such conditions as will protect himself in the prosecution of business carried on upon the residue, the other agreeing to buy for a consideration affected by that condition, and enabled to do so only by acceding to it, and he therefore binds himself by contract to limit the use of the land purchased in a particular manner. There seems no reason why he and his grantee, taking title with notice of the restriction, should not be equally bound. The contract was good between the original parties, and it should in equity at least bind whoever takes title with notice of such covenant. By reason of it the vendor received less for his land, and the plain and expressed intention of the parties would be defeated if the covenant could not be enforced as well against a purchaser with notice, as against the original covenantor. In order to uphold the liability of the successor in title, it is not necessary that the covenant should be one technically attaching to and concerning the land and so running with the title. It is enough that a purchaser has notice of it. The question in equity being, as is said in *Tulk* v. *Moxhay* (11 Beav. 571; 2 Phillips, 774), not whether the covenant ran with the land, but whether a party shall be permitted to use the land inconsistently with the contract entered into by his vendor, and with notice of which he purchased. This principle was applied in *Tallmadge* v. *East River Bank* (26 N. Y. 105), where the equity in regard to the manner of improvement and occupation of certain land grew out of a parol contract made by the owner with the purchaser, and was held binding upon a subsequent purchaser with notice, although his legal title was absolute and unrestricted.

In *Trustees* v. *Lynch* (70 N. Y. 440), the action was brought to restrain the carrying on of business on certain premises in

the city of New York, of which the defendant was owner,
upon the ground that the premises were subject to a covenant
reserving the property exclusively for dwelling-houses. The
court below held, among other things, that the covenant did
not run with the land, and that the restriction against carry-
ing on any business on the premises was liable to conflict with
the public welfare, and judgment was given for the defendant.
Upon appeal it was reversed, the covenant held to be binding
upon a subsequent grantee with notice as well upon the orig-
inal covenantor. So the restraint may be against the use of
the premises for one or another particular purpose, as that
no building thereon "shall be used for the sale of ale, beer,
spirits," etc., "or as an inn, public house or beer house."
(*Carter* v. *Williams*, L. R., 9 Eq. Cas. 678.) And it is said
a man may covenant not to erect a mill on his own lands.
(*Mitchel* v. *Reynolds*, *supra*.)

Many other instances of restraint might be referred to, and
where it is of such nature as concerns the mode of occupying
or dealing with the property purchased in the way of business
operations, or even the omission of all business or certain kinds
of business, or the erection or non-erection of buildings upon
the property, we see no reason to doubt the validity of an
agreement fair and valid in other respects, which secures that
restraint. Indeed, it seems well settled by authority that a
personal obligation so insisted upon by a grantor and assumed
by a grantee, which is a restriction as to the use of the land,
may be enforced in equity against the grantee and subsequent
purchasers with notice. (*Parker* v. *Nightingale*, 6 Allen, 341,
344; *Burbank* v. *Pillsbury*, 48 N. H. 475.) Nor is it essential
that the assignees of the covenantor should be named or
referred to. (*Morland* v. *Cook*, L. R., 6 Eq. Cases, 252.) In
*Tulk* v. *Moxhay* (1 Hall & Quell's Ch. Rep. 105), it was said
that the jurisdiction of the court in such cases is not fettered
by the question whether the covenant does or does not run
with the land. In that case the purchaser of land which was
conveyed to him in fee simple, covenanted with the vendor
that the land should be used and kept in ornamental repair as

a pleasure garden, and it was held that the vendor was entitled to an injunction against the assignee of the purchaser to restrain them from building upon the land. Upon the appeal the chancellor (COTTENHAM) said : " I have no doubt whatever upon the subject; in short, I cannot have a doubt upon it, without impeaching what I have considered as the settled rule of this court ever since I have known it. Where the owner of a piece of land enters into contract with his neighbor, founded, of course, upon a valuable or other good consideration, that he will either use or abstain from using his land in such a manner as the other party by the contract particularly specifies, it appears to me the very foundation of the whole of his jurisdiction, to maintain that this court has authority to enforce such a contract. It has never, that I know of, been disputed." The question before the court was stated to be whether a party taking property with a stipulation to use it in a particular manner, will be permitted by the court to use it in a way diametrically opposite to that which the party has stipulated for. * * * " Of course," he says, " of course the party purchasing the property which is under such restriction, gives less for it than he would have given if he had bought it unincumbered. Can there, then, be anything much more inequitable or contrary to good conscience, than that a party who takes property at a less price because it is subject to a restriction, should receive the full value from a third party, and that such third party should then hold it unfettered by the restriction under which it was granted ? That would be most inequitable, most unjust and most unconscientious ; and, as far as I am informed, this court never would sanction any such course of proceeding." And in language very applicable to the case before us he adds: "Without adverting to any question about a covenant running with land or not, I consider that this piece of land is purchased subject to an equity created by a party competent to create it; that the present defendant took it with distinct knowledge of such equity existing; and that such equity ought to be enforced against him, as it would have been against the party who originally took the land from

Mr. *Tulk.*" This case is cited and followed as to restrictive covenants in many cases. (*Brown* v. *Great East. R. Co.*, L. R. 2 Q. B. Div. 406 ; *London, etc., Ry. Co.* v. *Comm.*, L. R. 20 Ch. Div. 562, 576.) Each case will depend upon its own circumstances, and the jurisdiction of a court of equity may be exercised for their enforcement, or refused, according to its. discretion (*Trustees, etc.*, v. *Thacher*, 87 N. Y. 311); but where the agreement is a just and honest one, its judgment should not be in favor of the wrong-doer. Such seems to us the character of the covenant in question ; it is restrictive, not. collateral to the land, but relates to its use, and upon the facts found the plaintiff is entitled to the equitable relief demanded.

*Brewer* v. *Marshall*, (4 C. E. Green [N. J. Eq.], 537), is cited by the respondent as requiring a different construction. The general rules in regard to such covenants are not stated differently in that case. But in the opinion of the court it was not one for the interference of a court of equity. Among many other cases *Tulk* v. *Moxhay* (*supra*) is cited, and the learned court say : " It will be found upon examination that these decisions proceed upon the principle of preventing a party having knowledge of the just rights of another, from defeating such rights, and not upon the idea that the engagements enforced create easements or are of a nature to run with the land. In some of the instances the language of the court is. very clear on this point," and from a " review of the authorities " the court say " it is entirely satisfied that a court of equity will sometimes impose the burthen of a covenant relating to lands on the alienee of such lands, on a principle altogether aside from the existence of an easement or the capacity of such covenant to adhere to the title." The only question which the court regarded as possessed of difficulty was whether the covenant then in controversy was embraced within the proper limits of this branch of equitable jurisdiction. By a divided court an injunction was denied. The circumstances were quite unlike those before us and the decision furnishes. no precedent for us to follow.

The judgment appealed from should be reversed and new trial granted, with costs to abide the event.

All concur except PECKHAM, J., not voting, and ANDREWS and EARL, JJ., dissenting because, in their opinion, the covenant was a personal one and did not bind the grantee of the land.

Judgment reversed.