Scudder, J.
This action is brought to enjoin defendant, the Dumont Coal and Ice Company, Inc., from carrying on a coal and ice business on a piece of land owned by it. The action is based upon an agreement entered into on September 16, 1916, between a prior owner of defendant’s land, the Empire City Lumber Company, and the respective owners of two adjacent *660 parcels of land, namely, the plaintiff Albert H. Ackerman and the Rockview Coal and Ice Company, the predecessor in title of the land owned by the plaintiff Rubel Brothers, Inc.
The recital of this agreement contained a description of each of the parcels of land of the parties to it, and a statement to the effect that it was the desire of the parties to restrict the use of the land of the Empire City Lumber Company against the use of said land for the conduct of any business for the vending of coal and ice, for the benefit, respectively, of the lands of the two other parties to the agreement, and that the lands of each of said parties should become dominant tenements and the land of the Empire City Lumber Company should become the servient tenement. The consideration recited was one dollar and other good and valuable consideration. By this agreement the Empire City Lumber Company for itself, its successors and assigns, covenanted in substance and effect that there should not be maintained upon its land any track, switch or siding for transporting or conveying of coal or ice, and that no structure would be erected or maintained thereon for the transacting of any coal or ice business, and that neither coal nor ice would be kept or stored upon the land for the purpose of dealing therein, and that no coal or ice business, wholesale or retail, would be conducted on said land until January 1, 1937. It was further covenanted that the aforesaid covenant should be binding upon the Empire City Lumber Company, its successors and assigns, and inure to the joint benefit of the other parties to the agreement, their successors and assigns, and should be binding upon and run with the land of the Empire City Lumber Company, and' should be in each and every respect a covenant running with the land.
The agreement was under seal, and was recorded shortly after its execution.
*661 In order to understand the meaning and the purpose of the agreement and the relation to it of the parties to the action, it is necessary to give an outline of the facts and circumstances which attended its execution and the subsequent events.
The properties of the several parties to the agreement were located in a section of the borough of Brooklyn known as East New York. They adjoined the Long Island railroad, and by reason of the fact that they could be connected with the railroad by sidings, all of them were peculiarly available for conducting upon them a coal and ice business.
The Roekview Coal and Ice Company, one of the parties to the agreement, was owned and controlled by two brothers, Samuel and Isidore Rubel. They, in the name of the corporation, conducted on its premises a large retail coal business. Although the plaintiff Ackerman was a party to the agreement, he seems to have acted at the instigation or in aid of Rubel Brothers. During the pendency of the present action, he conveyed his premises to the plaintiff Rubel Bros., Inc., and he is no longer a party in interest. It would, therefore, seem unnecessary to consider its connection with the transaction.
The Empire City Lumber Company, the covenantor in the agreement, conducted a lumber business on its premises, and was not engaged in the coal and ice business. At the time of entering into the agreement it was in an insolvent condition and had a $10,000 mortgage on its property.
It seems that prior to the securing of'this restrictive agreement by the Rubel Brothers from the Empire' City Lumber Company, some thirty small coal dealers or peddlers, who were customers of Rubel Brothers and had become dissatisfied, associated themselves together for the purpose of organizing a company of *662 their own from which to purchase coal. They obtained a contract for the purchase of the property of the Empire City Lumber Company with the object of using it as the place of business of the proposed company, and thereafter incorporated a company under the name of the Municipal Coal Company, and assigned the contract to it.
Shortly prior to the time set for the closing of this contract of sale, on the day before or the same day, the Empire City Lumber Company executed the above-mentioned agreement restricting the use of its property for a coal and ice business.
It seems to me that the evidence establishes that Samuel Rubel, who acted for the covenantees in procuring the restrictive agreement, had knowledge of the contract of the Empire City Lumber Company, with the associated small dealers, and that the principal purpose or object of the restrictive agreement was to defeat the consummation of the sale of the land and the conveyance to the Municipal Coal Company. The Empire City Lumber Company was insolvent; its property was subject to a first mortgage of $10,000; it was under contract to sell its property to the Municipal Coal Company subject to that mortgage only. For $3,000 paid to it by the Rubels, the insolvent Empire City Lumber Company was induced not only to execute the restrictive agreement on the use of its property, but also a second mortgage for $3,000, thereby placing itself in a position where it could not perform its contract with the Municipal Coal Company and of willfully violating that contract. The Municipal Coal Company rejected title and at once commenced an action against the Empire City Lumber Company for specific performance with the alterna *663 tive relief in money damages. The action resulted in a judgment in favor of the Municipal Coal Company for a little over $1,700. This judgment was docketed on April 20, 1917. On November 26, 1917, an action was commenced by one Belanowsky to foreclose the $10,000 first mortgage. Before the foreclosure action had proceeded to judgment said Bubel Brothers purchased the mortgage and caused it to be assigned to a person designated by them; the assignee was substituted as party plaintiff, and judgment was entered directing the referee to sell the premises subject to the restrictive covenant. At the sale the Municipal Coal Company filed a written protest against having the property sold subject to the restriction. The bidding was between Bubel Bros., Inc., and the Municipal Coal Company. Bubel Bros., Inc., last bid was $13,450, a sum apparently sufficient to cover the $10,000 first mortgage, the $3,000 second mortgage and the foreclosure expenses. The Municipal Coal Company had its $1,700 judgment to protect, the judgment having been recovered subsequent to the making and recording of the second mortgage. On a bid of $13,500, the property was struck down to the Municipal Coal Company.
After such purchase the Municipal Coal Company made application to the court to direct the referee to give it a deed without the provision that the premises were conveyed subject to the restrictive covenant. This application was denied and thereafter the Municipal Coal Company accepted a referee’s deed conveying the premises subject to the restriction. In the surplus money proceeding which followed the foreclosure sale priority was given to the judgment of the Municipal Coal Company over the second mortgage on the ground that Bubel Brothers had caused said mortgage to be placed upon the property in fraud of the *664 rights of the Municipal Coal Company under its contract with the Empire City Lumber Company.
The Municipal Coal Company recorded its deed of the property from the referee on March 7, 1918. It did not attempt to carry on a coal and ice business upon the property. On December 17, 1918, it conveyed the property to one Moses Molach and on February 13, 1919, Molach conveyed it to the defendant, the Dumont Coal and Ice Company. Both the conveyance to Molach and the conveyance to the Dumont Coal and Ice Company were made in the interest of, and to carry out the purposes of the same associated small coal dealers who controlled the Municipal Coal Company. Neither the deed to Molach nor the deed to defendant contained a provision that the premises were conveyed subject to the restrictive covenant. Both of these grantees, however, had actual and constructive notice of that covenant.
In July, 1919, the defendant began doing a coal business on the land. The plaintiffs thereupon began this action and obtained an injunction pendente lite restraining defendant from carrying on such business.
Defendant was not a party to the restrictive agreement upon which this action is based. There is no privity of contract between plaintiffs and defendant. Plaintiffs seek to impose on defendant the obligation to observe the agreement on the ground that it creates a negative easement, that its covenants are covenants running with the land, and that there are equities arising from the facts and circumstances surrounding the agreement and the purchase of the property by defendant which require defendant to observe the agreement.
The question of easement' and that of covenants running with the land, which are involved in this case, do not require separate consideration. The covenants *665 in the agreement cannot run with the land and bind defendant, unless privity of estate exists between plaintiffs and defendant. Cole v. Hughes, 54 N. Y. 444. Such privity can be spelled out only in case the agreement is or can be regarded as an instrument of conveyance or grant of an easement. If it is an instrument conveying an easement, there is a privity between plaintiffs and defendant in that they have common source of title in the Empire City Lumber Company. The grant of an easement is in nature and substance a covenant running with the land. It would be difficult, if not impossible, to express a grant of a negative easement except in the form of a covenant.
It is apparent from the context of the agreement that it was the intent and purpose of the parties to it to create an easement, and it is expressly provided in the agreement that the covenants therein shall be covenants running with the land. So far as form and intention of the parties to it are concerned the agreement is a good and sufficient deed to grant an easement. The use of the word “ grant ” is not essential. Langdon v. City of New York, 93 N. Y. 129, 131.
If, however, the right granted by the agreement lacks any of the qualities which the law makes- essential to an easement, it does not convey an easement, and is void so far as defendant is concerned, notwithstanding the intention of the parties to the agreement to create an ea-sement, and the agreement itself is formally sufficient to grant it.
That which is essentially a personal contract cannot be made into either an easement or a covenant running with the land by a stipulation between the parties to the contract that it shall be an easement or covenant running with the land. Keppell v. Bailey, 2 Mylne & K. 517; Harsha v. Reid, 45 N. Y. 415; Pierce v. Keator, 70 id. 419.
*666 It is elementary law that easement rights are not such rights as would be of merely personal benefit to one who happens to be owner of the dominant tenement, but must be necessary or useful to the enjoyment of that tenement itself whoever may be the owner of it. 2 Washb. Real Prop. § 1225; 19 C. J. 864; Pierce v. Keator, 70 N. Y. 419, 422.
It seems very clear to me that the restriction which the agreement seeks to place upon defendant’s land against its use for a coal and ice business is in no way. necessary or beneficial to the use of plaintiffs’ land. Access to plaintiffs’ land, the use of the railway siding, and the coal pockets, will not be either aided or interfered with by the not carrying on, or the carrying on, of a coal and ice business on the defendant’s land. Damages for the breach of the restrictive covenant could not be recovered for injury to plaintiffs’ land, for there would be none; the only damages which could possibly be occasioned by a breach of the covenant would be plaintiffs’ personal loss from the carrying on of a competitive business on the defendant’s land.
This case, therefore, is not within the class of cases (of which the well-known case, reported on the first appeal as Trustees of Columbia College v. Lynch, 70 N. Y. 440, and on the second appeal as Trustees of Columbia College v. Thacher, 87 id. 311, is an example) that uphold restrictive covenants against the use of property for business, when made for the benefit of residential property.
Such covenants have the essential quality of easements in that they are for the benefit of the dominant tenement. The theory on which equity proceeds in this class of cases is that the covenants enforced create easement's and are, therefore, of a nature to run with the land.
In the Columbia College case above referred to the *667 court says (70 N. Y. 447): “ The purpose clearly disclosed was, by the restrictions mutually imposed by the owners respectively upon the use of their several properties, to make the lots more available and desirable as sites for residences, and the agreement professes to, and does in terms, impose for the common benefit, the restrictions in perpetuity, and to bind the heirs and assigns of the respective covenantors. This should be construed as a grant by each to the other in fee of a negative easement in the lands owned by the covenantors.”
The fact that the covenants in that case were mutual and furnished consideration for each other is a mere incident, and does not serve as a ground for distinguishing the Columbia College case from the present case. The question of privity of estate is also unimportant. Easements of all kinds may be created irrespective of any privity of estate, and for any good and valuable consideration. The vital and essential difference between the Columbia College case and the present case is that in the Columbia College case the purpose of the covenant was to make the dominant tenement more available and desirable for residential purposes, and for that reason the covenant possessed the qualities of an easement; whereas in the present case the purpose of the covenant is not for the benefit of plaintiff’s land, but for plaintiff’s personal benefit by preventing competition to their business, and the covenant lacks the qualities of an easement and' has only the force and effect of a personal contract.
Enforcement of restrictions or easements against the use of land for business in a court of equity is dependent on the continuance of conditions which! make its observance beneficial to the dominant tenement. When by changes in the neighborhood it ceases to be beneficial and its enforcement will merely pré *668 vent the use of the servient tenement for a business for which it is available without any corresponding benefit to the dominant tenement, a court of equity will not enforce it. McClure v. Leaycraft, 183 N. Y. 36, and cases there cited.
In the present case the respective properties of the? plaintiffs and defendant are situated in a business neighborhood and both are especially available to the carrying on of a coal and ice business. The enforcement of the restriction would not render plaintiffs ’ land more available for carrying on a coal and ice' business, and would merely prevent defendant from' using its property for the purposes to which it is adaptable.
My conclusion is that the sole object and purpose of the restrictive covenant being to prevent the carrying on of a business in competition with plaintiffs’ business, and not in any way to benefit plaintiffs’ land itself, it is a personal contract and not an easement or covenant running with the land.
It is true that it is well established that a court equity will sometimes impose the burden of a covenant relating to lands on the alienee of such lands, on principles altogether aside from the existence of an easement or the capacity of a covenant to adhere to^ the title. The only question to be considered whether the covenant in the present case is embraced within the proper limits of this branch of equitable jurisdiction.
The equities applied in such cases are those which arise from the facts and circumstances of the particular case and cannot be generally defined. It seems to' me that the cases on the subject do not justify the broad rule that a court of equity will always enforce against subsequent grantees with notice any agreement made by a prior owner restricting the use of real *669 estate without regard to the law of easements or .covenants running with the land.
The law does not permit the owner of real estate to contract in matters .affecting title as he sees fit. He cannot create new kinds of easements or covenants running with the land which are not authorized' or recognized at law.
Although a court of equity is not controlled entirely by the strict rules of law relating to easements and such covenants, and will depart therefrom if the equities of the particular case require it, it will never interfere by way of injunction or in any manner to enforce restrictive covenants, when convinced that they could receive no support or countenance at law because contrary to its policy and in conflict with public interest.
The eases upon which plaintiffs seem chiefly to rely are Hodge v. Sloan, 107 N. Y. 244, and Uihlein v. Matthews, 172 id. 154. In both of those cases there was a restrictive covenant against the carrying on of a business on the property of the covenantor which would be competitive with the business carried on upon the property of the covenantee. These cases do not, however, support the proposition that notice to the covenantor’s grantee, prior to conveyance to him, of such restrictive covenant, under all circumstances, no matter how or with whom made, is of itself sufficient to' create an equity which requires the grantee to observe the covenant. The Hodge and Uihlem cases differ from the present case in that in both of them not only was the restrictive covenant contained in a deed conveying real estate, but it was a part of the contract for the sale of real estate, affecting the consideration given for the property. In such cases the fundamental equity which requires the enforcement of the restriction against the covenantor’s grantee with notice is *670 that otherwise the grantee would acquire that which he knew had not "been bought or paid for by his grantor.
It seems to me that those cases are somewhat in the •nature of actions for specific performance of contracts to purchase real estate.
No such equity can exist in the present case. The' covenantees in the restrictive agreement never owned the covenantee’s property, but being wholly strangers to its title, went to the covenantor and obtained the restrictive agreement merely for a money consideration. Under these circumstances the restrictive agreement was only a personal contract. Harsha v. Reid, 45 N. Y. 415, 418.
Not only do the facts and circumstances of the present case fail to give rise to any equity which would require defendant to observe the restrictive covenant, but it appears therefrom that the Rubel Brothers’ conduct in obtaining the restrictive agreement was wrongful and inequitable toward the associated small coal dealers, whom the defendant now represents.
Plaintiffs’ situation was not in any way altered or changed by the recovery of the judgment of the Municipal Coal Company against the Empire City Lumber Company or by the purchase of the property at the foreclosure sale by the Municipal Coal Company, and there is nothing that the Municipal Coal Company has or has not done which precludes the court from refusing to plaintiffs equitable relief on the ground of their wrongful and unconscionable conduct in obtaining the restrictive agreement.
"While the restrictive covenant is in restraint of trade, the restraint is not general, but local. The covenant does not restrict the Empire City Lumber Company, its successors and assigns personally from carrying on a coal and ice business, but attempts to restrict *671 the use of a piece of real estate for a coal and ice business. Because of the location of the real estate, thei enforcement of the restriction would give plaintiffs a monopoly so far as the business of the local small coal dealers are concerned, and in consequence the poor people of a crowded city district would be deprived of the benefit which would accrue from the carrying on of a competitive coal business upon the property.
Injunctive relief may be refused where the granting of it would be detrimental to public interest and welfare.
Judgment for defendant dismissing the complaint, with costs.
Judgment accordingly.