### HILL et al v. TRIGG et al.    (No. 7354.)

(Court of Civil Appeals of Texas. San Antonio. April 22, 1925. Rehearing Denied May 13, 1925.)

**Covenants ⚖══79(3)—Defendant attempting to erect residence contrary to restriction contained in deed enjoined at instance of other lot owners.**

Where evidence showed a general plan and scheme of establishing a restricted residential district, in which all houses were to front on a private park, and defendant's deed contained such restrictions, as did all other deeds executed by original vendor, *held*, restrictions were for benefit of whole district and binding on all purchasers, and adjoining lot owners were entitled to injunction against defendant, under Rev. St. art. 4643, where he attempted to erect residence violative to such restrictions, and that one of defendant's prior vendors failed to specifically mention restrictions did not thereby make it ineffective as to him.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by R. K. Trigg and others against Sid Hill and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Capps, Cantey, Hanger & Short, of Fort Worth, for appellants.

Smith & Smith, Dedmon & Potter, and Ocie Speer, all of Fort Worth, for appellees.

FLY, C. J. This action was instituted by appellees R. K. Trigg, W. S. Ferrell, H. L. Crow, and Texas Woman's College against Sid Hill, F. B. Remer, and Mrs. Bonnie Hayslip, feme sole, through a voluminous petition; the prayer being for the forfeiture of title to blocks 7 and 8 in West Handley, Tex.,

and its investiture in appellees and other lot owners in Erie Hill Place, a restricted residential district, the said blocks being divided into eight lots each. In the alternative was a prayer for a mandatory order requiring appellants "to arrange, change, and conform the buildings on their said lots so as to front on Private Park in keeping with said plat, general building scheme and said restrictive covenants of Erie Hill Place, and so as to prevent further injury to the plaintiffs in their property rights and in the peaceful, quiet enjoyment and use thereof." Another alternative was presented that appellants pay appellees damages in the sum of $10,000. The cause was submitted to a jury on 18 special issues by the court and four requested by appellants, and on the answers thereto judgment was rendered that Sid Hill be required, within 60 days; to "change and conform his lot or place O, in Erie Hill Place, in said Tarrant county, Tex., so as to front north on Private Park in keeping with the plat, general building scheme, and restricted covenants of Erie Hill Place, so as to prevent further injuries to the plaintiffs in their property and property rights and in the peaceful and quiet enjoyment thereof." It is recited in the judgment that' F. B. Remer and Mrs. Bonnie Hayslip had entered into an agreement with appellees, since the filing of the suit, to conform to the covenants in the deeds, and the suit had been dismissed as to them.

In answer to the issues submitted to them the jury found that Sid Hill, when he accepted a deed to his lot described as "O," in the subdivision known as "Erie Hill Place," had actual knowledge of the general plan and scheme of the subdivision, and with such actual knowledge of the requirements and restrictions as to the direction the houses should face, namely, on a street or highway known as "Private Park." The jury also found that Sid Hill had constructive notice of the requirements as to the erection of buildings in the subdivision; that his father was his duly authorized agent in the purchase of lot O; that said agent had actual notice or knowledge of the general scheme and plan as to the subdivision; and that it required the facing of buildings erected on lot O towards the north on "Private Park," and acted as the agent of Sid Hill in the erection of buildings on lot O. The jury also found that appellees were damaged each in a certain sum by a refusal on the part of Sid Hill to conform to the requirements as to building in the subdivision. The jury in response to issues submitted by Sid Hill found that, when he received notice as to the scheme of building in the subdivision, he had not progressed so far in the construction of his house as to have sustained financial loss by a change so as to face the building towards the north; that Lewis Waters and Roy Brace-

well had notice of the building restrictions when they purchased their lots. Lewis Waters was the immediate vendor of appellant, and Roy Bracewell was the vendor of Lewis Waters. The findings of the jury are sustained by the statement of facts; and we further conclude that D. E. Phillips, who owned blocks 7 and 8 of West Handley, a portion of the G. N. Butts survey, adopted a plan for said blocks and named them Erie Hill Place, and placed on record in Tarrant county records of deeds the adoption of the plans, with a map thereof. This was done on May 26, 1910. On June 18, 1910, a warranty deed was executed by D. E. Phillips and Cora Phillips, his wife, to George Mulkey, conveying to him places A, H, M, and N, shown on the plat or map, and in that deed was the following condition or restriction:

"All residences which may be built upon the land herein conveyed shall front the private parks as shown on the plat, and any failure so to do will cause forfeiture of all rights, title and interest to the property herein conveyed, and ownership shall, without release or conveyance or without suit or other action, be vested equally in the respective owners of each of the other places in this block."

The same condition was carried into a deed by Phillips and wife, conveying to Mulkey place C on said plat, and in a warranty deed by the same vendors to A. S. Carter to places E and F, and in warranty deed from the same vendor to Mrs. Tims to place B, and to Roy Bracewell to place O. In all these deeds the condition was made as in the deed to George Mulkey. Roy Bracewell and wife sold place O to Lewis Waters, who sold it to Sid Hill, and in the deed the land was described as:

"All that certain tract or parcel of land lying and being situated in Tarrant county, Texas, and more fully described as follows: Lot O, Erie Hill Place, a subdivision of Blks. Nos. seven (7) and eight (8), West Handley, Texas, and all improvements thereon."

In the deed from the Bracewells to Waters the land was described as:

"All that certain lot of land known and described as place lettered 'O' Erie Hill Place, in Tarrant county, Texas. Shown by plat recorded in book 310, page 55, plat records of Tarrant Co., Tex."

Not only was appellant put upon notice through his chain of title of the restrictions and conditions bearing upon his land, but he had actual knowledge of such conditions. He had an abstract of title showing the conditions of the deeds made by Phillips and wife. The plat of the land was in the abstract. He knew that the blocks had been laid out with a park or street running through, and that the sidewalks had been built along the south side of the north lots and north side of the south lots. He knew that the houses being built on the two blocks were fronted on the private park. Appellant alone of all the purchasers and residents seeks to place the rear of his place in the direction the others' front, and he alone in contravention of the conditions made when the two blocks were made a residential district desires to front his building in a contrary direction from that of his neighbors. Appellant bought with full knowledge of the conditions in the deed from Phillips to Bracewell, through whom he claims.

The evidence shows indubitably that there was a general scheme for the building district which Phillips had mapped, platted, and laid out, and that this scheme was open and apparent to every one who purchased a lot in the addition designated Erie Hill Place. The idea was to lay out each block in eight lots; the blocks being separated from each other by a 50 foot street and a park or street 50 feet wide; 20 feet being allowed for a street along the north side of the south lots, and one the same width along the south side of the north lots, with a parking 10 feet wide between the two 20 feet streets. It was intended and so provided that each house built on the two blocks should front on the street running through the blocks. All these matters are clearly evidenced by the recorded plat as well as by the provisions in the deeds made by Phillips. There was a general plan strictly adhered to until appellant chose to disregard it and to act in defiance of the plan for a restricted residential district. No lots were shown to have been sold by Phillips without the restrictions, but if there had been that would not destroy the well-laid plan shown by the recorded plat. It is true that Bracewell, the vendee of Phillips, in his deed to Waters and Waters in his deed to appellant did not specifically mention the restrictions or conditions, but the status of the property had been fixed, and these vendors could not destroy, by a failure to mention it, a restriction imposed upon the property by the vendor, who had planned the residential district. If any man who might come into possession of one of the lots could by not naming the restriction in a deed executed by him destroy the restrictions, the rights acquired by purchasers could be destroyed or impaired, and there would be no redress. As said in Hooper v. Lottman (Tex. Civ. App.) 171 S. W. 270:

"There may, however, be departures from the usual restrictions in individual cases without destroying the integrity of the scheme of development as a whole. * * * And, although some of the lots may have written restrictions imposed upon them and others may not, yet if the general plan has been maintained from its inception, without material departure therefrom, and if it has been understood and relied upon by those concerned, it is binding and enforceable inter sese."

That language was used in a case where the designer of the plan, the original owner, had failed at times to name the restrictions

in his deeds, which is probably not as strong a case as this, where Phillips invariably named the restrictions, and where he named them in a deed to a vendee through whom appellant claims title. In that case the rule in cases similar to this is thus clearly stated, which statement is commended in the case of Curlee v. Walker, 112 Tex. 40, 224 S. W. 497, by the Supreme Court:

"The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers. So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase."

The language quoted covers the facts of this case like a garment. It is supported by authorities in various states and by a number in Texas.

We have been referred to no case by appellant that militates against the rule. Tiffany Real Property has been cited by appellant and quotations selected to the effect that courts do not favor restrictions upon the use of land and another matter, but sections 397 and 398, p. 1438 et seq., which bear directly upon the facts of this case, seem to have escaped the notice of appellant. In section 397 it is said:

"So far as the agreement which is sought to be enforced against a subsequent holder of the land concerns, as is almost invariably the case, the use to be made of the land, it is a question of primary importance whether the agreement concerns the use to be made thereof by the promisor only, or the use to be made thereof by others as well. A use by a subsequent purchaser cannot well be restrained, if the agreement was intended to prevent the promisor only of the use to be made by others. What the intention was in this regard is a question, but, since it is ordinarily immaterial to the promisee, who may make any particular use of the property, the presumption would seem to be, in the absence of a clear showing to the contrary, that such a use by any person whomsoever is intended, and an intention to this effect would 'appear' to be clearly indicated by the fact that the agreement in terms binds the promisor's assigns, or that the agreement is in an impersonal form, that the land shall not be used in a particular way."

The facts in this case bring it directly within the rule of the text.

The case of Hodge v. Sloan, 107 N. Y. 244, 17 N. E. 335, 1 Am. St. Rep. 816, fully sustains the text, for which it is cited in a footnote, and the opinion therein holds:

"Parties competent to contract have contracted, the one to sell a portion of his land, but only upon such conditions as will protect himself in the prosecution of business carried on upon the residue; the other agreeing to buy for a consideration affected by that condition, and enabled to do so only by acceding to it, and he therefore binds himself by contract to limit the use of the land purchased in a particular manner. There seems no reason why he and his grantee, taking title with notice of the restriction, should not be equally bound. The contract was good between the original parties, and it should in equity at least bind whoever takes title with notice of such covenant. * * * In order to uphold the liability of the successor in title, it is not necessary that the covenant should be one technically attaching to and concerning the land and so running with the title. It is enough that a purchaser has notice of it."

It is said in the brief of appellant that:

"Since the decision of Judge Phillips in Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, there has never been a question in any of the courts to the proposition in this case."

This is not only a dogmatic statement and probably not very complimentary to the trial court, but it is decidedly incorrect, because the opinion in the Spann-Dallas Case has no bearing whatever upon appellant's propositions nor upon the facts of this case. The court in the Spann Case was passing upon the validity of an ordinance of the city of Dallas, prohibiting the construction of a business house within a residence district, except on a permit granted by consent of three-

fourths of the property owners within a radius of 300 feet and in accordance with a design approved by the building inspector. The ordinance was held to unlawfully interfere with the owner's right to use his property. The opinion is simply a decision on the police powers of a city and, whether correct or not, it has no bearing upon a contract such as the proof showed was made in this case. No authority has been cited by appellant that sustains his proposition to the effect that he is not bound by a restriction, the product of a general plan or scheme of building, because the restriction was not contained in his deed.

Appellees had in compliance with the terms of the restrictions built their homes, and no one will be permitted in defiance of law, in disregard of the rights of his neighbors, and with no regard to the demands of equity and good conscience, to trample on the restrictions. The case was one for a court of equity, and appellees had the right, regardless of what a court of law might have done for them, to restrain the perpetration of the wrong against their property rights. Tiffany is invoked to sustain the proposition to the effect that appellees could not appeal to a court of equity for redress, as they had an adequate remedy at law. The writer sustains no such proposition, although appellant says that:

"It is too elementary to even cite authorities to the effect that, if appellants have an adequate remedy at law, they are not entitled to an injunction."

The restrictions as applied to appellant are equitable restrictions which are fully treated by Tiffany in chapter 15 of his work on "Real Property." He begins that chapter with the assertion that:

"Even in jurisdictions where, as in England, the burden of a covenant does not run with the land, an agreement as to the use of land may, under certain circumstances, affect a subsequent purchaser of the land who takes with notice of the agreement, equity in such case enjoining a use of the land in violation of such agreement."

Again the writer on page 1427 cited by appellant says:

"The courts do not favor restrictions upon the utilization of land, and that a particular mode of utilization of land excluded by agreement must clearly appear. If this does appear, the fact that the person seeking relief cannot show that such user of the land will cause him actual damages is usually immaterial, though it may happen that the particular violation of the agreement sought to be restrained is so unimportant that equity will not intervene. The court will give relief when necessary by a mandatory as well as by a prohibitory injunction."

Appellees had the right to enter a court of equity for relief, and the evidence established their right to receive it. The pleadings of appellees were full enough to satisfy the demands of an ancient court of chancery. In full compliance with article 4643, Rev. Stats. of Texas, appellees showed themselves entitled to the mandatory writ of injunction under the principles of equity.

The judgment is affirmed.