# CHARLESTON

ROBINSON *et al* v. EDGELL *et al.*

Submitted January 31, 1905.     Decided February 14, 1905.

1. EQUITY JURISDICTION—*Injunction—Negative Covenants in Deeds—Enforcement.*

    Courts of equity will enforce, by injunction, negative covenants and clauses in deeds, restricting the use of real estate, though they do not, in law, constitute easements or covenants running with the land; but the jurisdiction is discretionary and is governed by the principles applicable to the enforcement of specific performance of contracts. (pp. 160, 161.)

2. EQUITY JURISDICTION—*Negative Covenants in Deeds.*

    Equity will not enforce such covenant if it appears that, since the conveyance was made, the general conditions and surroundings of the property, continuation of which was contemplated by the parties, have been so changed, otherwise than by the act of the covenantor, as to render the enforcement of the covenant inequitable and burdensome to him and defeat the purpose of the restriction. But conditions existing at the time of the conveyance will not, in the absence of fraud or other vitiating element, constitute ground of defense to such suit. (p. 161.)

3. REALTY—*Restrictions on Against Public Policy.*

    Permanent restrictions upon the use of real estate being contrary to the policy of the law, courts of equity, in enforcing compliance

with restrictive covenants, limit the decree by the duration of the conditions and relations which form the basis of the equity calling for such enforcement. (p. 165.)

Appeal from Circuit Court, Wetzel County.

Bill by L. G. Robinson and others against C. W. Edgell and others. From a judgment dismissing a bill, plaintiff's appeal.

*Reversed.*

E. L. ROBINSON, J. H. STRICKLING, HUNT & STAPLES, and HENRY M. RUSSELL, for appellants.

SPERRY & SPERRY and JOHN BASSELL, for appellees.

POFFENBARGER, JUDGE:

The circuit court of Wetzel county having dissolved the injunction and dismissed the bill, upon a full hearing, in a suit brought to enforce, by injunction, a negative covenant in a deed, restricting the use of the property thereby conveyed, the plaintiffs, grantors in the deed, have appealed.

The property involved is a lot about thirty by eighty feet, at a point in an oil region of Wetzel county, on the West Virginia Short Line Railroad at a station called Robinson. It was conveyed on the 28th day of May, 1903, by L. G. Robinson and J. S. Robinson to C. W. Edgell for and in consideration of three hundred dollars. The restrictive clause involved reads as follows: "This writing prohibits the sale of intoxicating liquors in any manner whatever on the premises hereby conveyed, and this is a part of the consideration." The lot was a part of an estate, containing about seventy acres, which had been purchased by the Robinsons from the heirs of one Talkington. Talkington had left a widow and some children. Under a purchase, lease or license from the widow, a man by the name of Ice, at the time of the purchase by the Robinsons, had a building on part of the land in which he was conducting a retail liquor business. On the same day on which the conveyance was made to Edgell, the house in which Ice was doing business and the lot of ground on which it stood were conveyed to Emma M. Ice, A. B. Ice and James Ice, by a deed which contains no clause restricting the use of the property, and the business then being conducted on the premises was continued.

This lot and the lot conveyed to Edgell adjoined each other. The Robinsons still retained the larger portion of the land purchased from the Talkington heirs and sold some additional lots out of it, both before and after the conveyance to Edgell, and in all the deeds except the one executed to Ice, there are clauses prohibiting the sale of liquors on the lots. They justify the exception in that instance on the ground that the grantees in that deed had an interest in the land, as assignees of the dower interest, in consequence of which there was a compromise or adjustment under which the Ices obtained their lot without any restriction upon its use.

Edgell erected a building on the lot, and, in November, 1903, leased the third story room of the building for the period of twelve months to P. P. Higgins, who, together, with H. Behrman and P. Crim, contemplated using the the same for saloon purposes, and prepared to open a retail liquor business therein. Thereupon the Robinsons brought this suit.

Edgell filed an answer to the bill, setting up as matters of defense that the clause in question had been fraudulently inserted in his deed after the execution and delivery thereof, and that Robinson had waived the benefit of the clause by omitting such clause from the deed made to Ice and from other deeds. The allegation of fraudulent insertion of the clause in Edgell's deed is not sustained by the evidence. As to whether it had been omitted from certain deeds, other than the Ice deed, is not entirely certain. If it was, it was afterwards inserted in one instance, by consent of the grantee, and, in the other, without the grantee's knowledge. The theory of the defense is, that, after the contract to sell to Edgell was made, the Robinsons and Ices conceived the idea of creating for themselves a monopoly of the liquor traffic in that village, and procured the alteration of the deeds, so as to restrict from such use all of the lots sold by the Robinsons except the one sold to the Ices. P. A. Ice, by his own admission and the testimony of other witnesses, appears to have been active in procuring the insertion of these restrictive clauses in the deeds made to one P. B. Robinson, and a firm known as Smith & Parrish. He also admits having paid to one Morgan, the owner of a tract of land

near the village, the sum of five hundred dollars, in consideration of his agreement not to allow any of his property to be used for saloon purposes. Having the unrestricted use of his own property, the insertion of the covenant against sales of liquor in the deed made to P. B. Robinson was beneficial to him, and, in making inquiry about it, he was no doubt actuated by his own interest, but the acceptance, on the part of J. S. Robinson and L. G. Robinson. of any proper service rendered by him, is not inconsistent with the object which they say induced them to place restrictions · upon the use of other property.    As to the Smith and Parrish deed, it can only be said the clause is in it and no steps have been taken to eliminate it, and it has not been clearly shown to have been fraudulently inserted.

The jurisdiction in equity to enforce negative covenants, restricting the use of real property is not denied.    On the contrary, it is frankly admitted.    Such jurisdiction is upheld by the courts everywhere.    "Covenants restraining the use of real property afford an instance of that class of cases in which equity will charge the conscience of a grantee of land with an agreement relating to the land, although the agreement neither creates an easement nor runs with the land.    The jurisdiction is not confined to cases in which an action at law can be maintained, and such covenants, although not binding at law, will be enforced in equity, provided the person into whose hands the land passes has taken it with notice of the covenants." 11 Cyc. 1078.  Pomeroy's Eq. Jur. section 1342, says such covenants "will be specifically enforced in equity by means of an injunction not only between the immediate parties, but also against subsequent purchasers with notice, even when the covenants are not of the kind which technically run with the land.    The injunction in this class of cases is granted almost, as a matter of course, upon a breach of the covenant.    The amount of damages, and even the fact that the plaintiff has sustained any pecuniary damages, are wholly immaterial."  To the same effect, see Beach on Inj. section 474.    This proposition is .sustained by numerous decisions cited in support of the text above quoted and referred to.

The most frequent illustrations of the application of the principle are found in cases involving the rights of parties.

holding by conveyance town lots. as subdivisions of a tract of land, the use of which had been limited by like, or similar, clauses inserted in all the deeds for the purpose of impressing upon all the property a certain character or quality, such as residence property. To the end that such property may be the more readily and advantageously sold, the use of each lot for trade, manufacturing, commercial or business purposes is prohibited. Although the clause is not a covenant to do a beneficial act upon the property of the grantor so as to directly annex to that property a benefit, but, on the contrary, binds the grantee to abstain from the doing, upon his own lot, of a certain act, a court of equity looks to the whole scheme as one intended to confer a benefit upon the property remaining in the hands of the grantor after the sale of each lot; and passing by subsequent conveyances to the grantees of other lots, as beneficial interests or rights attached to their lots, and therefore enforces observance of the provisions and restrictions, as readily as a court of law would award damages for the breach of a covenant annexed to real property in such a manner as to make it a covenant running with the land. Beach on Inj. section 474; *Whitney* v. *Union Ry. Co.*, 11 Gray (Mass,) 359; 71 Am. Dec. 715; *Parker* v. *Nightingale*, 6 Allen (Mass.) 341; 83 Am. Dec. 632; *Peck* v. *Conway*, 119 Mass. 546; *Smith* v. *Barry*, 36 Mich. 314; *Watrous* v. *Allen*, 37 Mich. 262; *Hodge* v. *Sloan*, 107 N. Y. 244.

The right to invoke relief by injunction in such cases is not absolute, however. To a certain extent, the jurisdiction is discretionary. It is governed by the same general principles which control the jurisdiction to compel specific performance of contracts. Where a proper case for its exercise is shown, relief is granted as a matter of course, but if, under the conditions and circumstances obtaining, the granting of the relief sought would work injustice or be ineffectual of any meritorious result, it will be refused. If, therefore, the restrictive covenants in deeds, conveying lots, were made with reference to the continuance of existing general conditions of the property and surroundings, but in the lapse of time there has been a change in the character and surroundings, so as to defeat the purposes of the covenants and to render their enforcement an inequitable, unjust and use-

less burden upon the owner of the lot, equity will refuse its aid and leave the plaintiff to his remedy at law. *Trustees* v. *Thatcher*, 87 N. Y. 311; *Page* v. *Murray*, 46 N. J. Eq. 331. When such change in conditions is due to the act of the grantor or is assented to by him, equity will not interfere at his instance. *Page* v. *Murray*, cited.

Defense to this suit is made under this exception to the rule, founded upon the discretionary character of the jurisdiction. The argument is 'that, as, by conveyance to Ice, without any restriction upon the use of the lot, the grantors, by their own act, subjected their adjacent land, as well as the lot conveyed to the defendant, Edgell, to the very influence which they ostensibly sought to avert by the insertion of the restrictive clause in the Edgell deed, the enforcement of the clause in the Edgell deed would be inequitable and unproductive of any beneficial result. Morover, at the time of the purchase of the lands from the Talkington heirs, they were already subjected to the objectionable influence and had, in no sense, any special character or quality impressed upon them. Though all the precedents on this subject, cited or found, have presented cases in which the circumstance, or the act of the grantor, which made it inequitable to enforce the restriction, was subsequent to the date of the conveyance in which the restrictive covenant had been inserted, it is insisted that the relation in time between the conveyance and the matter relied upon to defeat enforcement of the covenant is immaterial.

· The defect in this contention is the failure to allow the conditions existing at the time of the conveyance and the intent and purpose of the grantor, all of which were known to the grantee and assented to by him, any weight or effect. It asserts, as ground for relief from the restrictive clause, not conditions which have arisen since the contract was made, but those which were in full view of the parties at the time it was made and are deemed to have been included in it. Nothing has occurred since the conveyance which has wrought a change in conditions. The lot was taken subject to known existing conditions, and a stipulation in the deed prohibiting a particular use of it. To permit the grantee to prevent the operation of the restrictive clause by setting up prior or contemporaneous conditions would enable him to

take advantage of his own acts, rather than those of the grantor. Unlike most instances of the subjection of property to limitation upon its use for a certain trade or business, the lot involved here has not the benefit of a like restriction upon all adjacent property. It is not protected from the business or influence, the prevention of which is the ostensible purpose of the burden which has been placed upon it. The equitable easement or servitude, if any, which the grantor has annexed to his remaining property, by imposing the burden of restriction of use upon the lot conveyed to Edgell, is partially defeated by the liberty of full and unrestricted use of the lot he conveyed to Ice, and the failure to limit the use of that lot almost wholly deprives Edgell of any reciprocal benefit from the limitation to which he has consented. This results, however, from the close proximity of his lot to the one on which the saloon is. He has the benefit of the implied limitation upon the use of the grantor's remaining lands, and there may have been a reduction in the price of the lot as a further consideration. The deed recites that the restriction is a part of the consideration, and there is testimony tending to show such reduction. This view of the contract, conditions and relations of the parties, therefore, could only raise a question of adequacy of consideration, and courts will not refuse specific performance on the ground of inadequacy, unless it is so great as to shock the conscience and raise a presumption of fraud. This the evidence does not disclose. Had the conveyance to Ice followed that made to Edgell, instead of accompanying or preceding it, the latter might well set up against the plaintiffs their own breach of the mutual arrangement made for the benefit of the grantee as well as that of the grantors. This subsequent act would be in the nature of a failure of consideration, a waiver of the easement, or a wrongful act, precluding relief under the rule that he who invokes the aid of a court of equity must come with clean hands, and under the operation of the maxim that he who seeks equity must do equity. These principles cannot be applied to prior or contemporaneous acts and conditions, unless it be shown that the grantor, by suppressing knowledge and information or some other fraudulent conduct, has overreached the grantee and taken an unconscionable advantage from which equity would grant relief,

or because of which it would withhold its aid. Nothing of that kind appears here. The saloon on the adjoining lot was open and in full blast when the purchase was made. This was sufficient to put the grantee on inquiry. It was a patent condition to which he made no objection. He took the deed subject to it, and is alone responsible for the situation of which he complains.

That the lot conveyed to Edgell is subject to the effect of the liquor traffic conducted on the adjoining lot and its value is thereby made less than it would be if its use were not restricted, does not preclude an honest and proper motive for the insertion of the restrictive clause. Why may a land owner not exclude a certain class of business from one portion of his land without forbidding it on another? If he does so, does it not necessarily result that portions lying next to the division line may be in the exact situation in which Edgell's lot is? Might not the same result occur, in excluding such business or trade from the whole of a tract of land, as to so much of it as adjoins the lands of others over which the owner of the tract has no control? These are inevitable and unavoidable incidents to the exercise of this power of exclusion. Hence, they afford no ground for the claim that the effort to exclude is futile, and the enforcement of the covenant in this instance would not effectuate its ostensible purpose. By limiting the use of the Ice lot, that purpose would have had broader scope and the exclusion would have been practically complete, but, by their contract, the parties have defined and fixed the scope and determined the extent of exclusion, and no change has occurred by which it has been wholly or partially defeated, and the grantor has done nothing which justifies refusal of the aid of the court.

As to the other ground of defense, namely, that the suit is only a step in the execution of an arrangement to restrain the trade in liquors and create a monopoly in the hands of Ice, it is not necessary to say more than that the evidence does not sustain it. A. P. Ice was active in procuring the insertion of the restrictive clauses in the deeds. He paid Morgan $500.00 as consideration for his agreement not to allow the business conducted on his premises. Clendenning, his lessee, and Morgan, his confederate,

executed the $3,000.00 injunction bond in this suit, as principal and surety, respectively, and J. S. Robinson almost admits that some of these people have indemnified the plaintiffs against costs and damages in the suit, but he does not say so and there is no other evidence of it. The burden of proof as to this defense, is on the defendants. They must prove their affirmative matter of defense, and we deem the evidence adduced insufficient.

Our conclusion is that the circuit court erred in dissolving the injunction. Hence, the decree complained of must be reversed, and the injunction will be perpetuated, subject to the right, in the defendants and their assigns, to have the same hereafter dissolved for any sufficient cause that may be shown. As has been stated, the jurisdiction invoked is purely equitable and discretionary and its exercise will extend no further than equity, conscience and justice demand. Therefore, the condition is put in the decree so that, in the event of such changes in the future, or such conduct on the part of the grantor and those claiming under him, as would make the burden of the restriction inequitable and oppressive, the coercive power of the court may be withdrawn and the parties left to the pursuit of such legal remedies as they may have. *Winnepesaukee Association* v. *Gordon*, 63 N. H. 505.

*Reversed.*