# CHARLESTON

ALBERT H. COLE *et al. v.* DIXIE (BROWNING) SEAMONDS *et al.*

Submitted September 14, 1920.   Decided September 28, 1920.

1.  INJUNCTION—*Covenant Attaching to Property Enforceable by Injunction Against Subsequent Owner.*

    Where an owner of land conveys part of it to another, and by a covenant or clause in the deed agrees not to use the remaining portion thereof for certain enumerated purposes, and the instrument imposing the restrictions, and the surrounding circumstances, clearly indicate that the primary purpose of the agreement is not merely to benefit the covenantee in his particular use of the land, but to benefit the land itself, as by improving the physical and moral conditions of the vicinity, limiting the enjoyment of one parcel of land in favor of another and pro tanto enlarging the enjoyment of the other, such contract creates an equity which attaches to the property to be burdened in favor of that to be benefited, and which a court of chancery will enforce by injunction against all subsequent owners, not purchasers for value without notice, provided the agreement does not infringe upon some principle of public policy, and the circumstances have not so changed as to defeat the original purpose of the restriction and render nugatory, ineffectual and unduly burdensome its further enforcement.   (p. 20).

2.  COVENANTS—*Restrictive Covenant for Benefit of Vendor Does Not Differ from Covenant for Benefit of Purchaser.*

    There is no valid difference in principle between a restrictive covenant made by a vendee for the benefit of land retained by the vendor, and one made by a vendor touching his remaining land for the benefit of that conveyed to his vendee.   (p. 20).

3.  SAME—*Restrictive Covenants May Be Enforced with Notice.*

    It is not material whether such restrictive covenants do or do not, in law, constitute covenants running with the land. The theory of their enforcement in equity is, that it is unconscionable and inequitable that a vendee be permitted to use land in a manner inconsistent with a contract entered into by his vendor, and with notice of which he purchased; his conscience is equally bound with that of his vendor, and he acquires only such rights as his vendor himself can transfer.   (p. 22).

4.  VENDOR AND PURCHASER—*Restrictive Covenants Enforceable Against Purchaser with Constructive Notice.*

Actual notice of such restrictive covenants is not essential. Such constructive notice as is afforded by a duly recorded instrument in the vendee's chain of title is sufficient. (p. 22).

5.  COVENANTS—*Restrictive Covenant for Benefit of Covenantee is Personal as Between Parties.*

Ordinarily, the limitations imposed by such restrictive covenants tend towards the physical or moral advantage of the covenantee's property, by improving the appearance of the properties in the immediate vicinity, and by increasing the quiet and elevating the moral tone of the community. But where the restrictions tend only indirectly to achieve these ends, and disclose a purpose primarily to benefit the covenantee in his particular use of the land, rather than to improve or preserve the physical condition of the land itself and the moral conditions surrounding it, a court of chancery may treat such agreement merely as a personal covenant between the parties, and not as one creating an equity in the nature of a property right.   (p. 28).

6.  SAME—*Doubt as to Purpose of Restrictions Resolved in Favor of Unrestricted Use of Property.*

Any doubt respecting the purpose, propriety or validity of restrictions limiting the enjoyment of property ordinarily is resolved in favor of its free and unrestricted use.   (p. 28).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Logan County.

Suit for injunction by Albert H. Cole and others, trustees, etc., against Dixie (Browning) Seamonds and others.   Decree for plaintiffs, and defendant Seamonds appeals.

*Reversed, injunction dissolved, and bill dismissed.*

*E. L. Hogselt,* for appellant.

*Fitzpatrick, Campbell, Brown & Davis,* for appellees.

LYNCH, JUDGE:

By deed bearing date July 7, 1888, John R. Browning granted unto Stuart Wood all the minerals contained within a tract of 2240 acres of land located on Main Island Creek, Logan County, and conferred on the grantee full, liberal and comprehensive mining rights and privileges upon and under the surface of the tract; all of which Wood conveyed to J. O. Cole and Clinton

Crane by deed bearing date June 4, 1913. Out of the surface and as part of it the elder Browning conveyed to his son Reece 156 acres subject to the mining rights and privileges theretofore granted to Wood. On November 26, 1913, Reece Browning conveyed to Cole and Crane, owners of the minerals thereunder, the surface of the 156-acre tract theretofore granted to him by his father, excepting and reserving from such conveyance, however, two acres of the surface. Respecting the two acres the deed provides: "And the parties of the second part, pursuant to the said contract of sale, hereby release said two acres of land from the operation of any rights for mining purposes, or rights of way mentioned in the said deed from John R. Browning and wife to the said Stuart Wood; and in consideration of the said release, the said parties of the first part covenant and agree to use the said two acres of surface land for residence and agricultural purposes only, and covenant and agree for themselves, their executors, administrators and assigns, not to conduct or suffer to be conducted on said two acres of surface any mercantile business, and that no intoxicating drinks of any character are to be sold or kept thereon; and this covenant shall run with said two acres of surface land."

On January 22, 1916, Reece Browning and wife, for a valuable consideration, conveyed one-sixth of an acre of the two-acre tract to the petitioner, Dixie Browning (now Seamonds), their daughter, without reservation, exception or limitation of any sort except that she should not sell and convey the parcel without their consent. Petitioner says she did not at that time have actual knowledge of the restrictions contained in the Reece Browning deed to Cole and Crane, though it constituted part of her chain of title, having theretofore been duly recorded.

By virtue of these conveyances Cole and Crane became vested with the title to the surface of the 154 acres and of the minerals underlying the tract of 2240 acres purchased from Stuart Wood, and they also owned a larger tract or tracts in one contiguous body likewise situated on Main Island Creek and containing approximately 28,000 acres. As a result of coal mining operations on this acreage, the town of Omar, situated on the 154-acre tract, grew and prospered. On December 6, 1916, Cole

87 W. Va.

and Crane conveyed their entire holdings to plaintiffs, to be by them held in trust pursuant to the provisions of a written Declaration of Trust of the Cole and Crane Real Estate Trust executed by the parties concurrently with the deed.

Thereafter and in violation of the restrictive covenants contained in the deed from Reece Browning to Cole and Crane, petitioner rented a building situate on the one-sixth acre conveyed to her to M. A. Hindy, a codefendant, who is conducting therein a general mercantile store, and let another building on said parcel to codefendant Nick Gemerous who is using the same as a "hot dog" and soft drink establishment, both presumably being conducted in competition with the five commissaries owned and operated by the coal company at various points in the town of Omar. For the purpose of enjoining such action on the part of defendants in violation of the covenants restricting the use of the two acres retained by Browning, out of which the one-sixth acre owned by petitioner was carved, plaintiffs as successors in title of Cole and Crane, the covenantees, instituted this suit and obtained the injunction which petitioner in this proceeding seeks to dissolve.

It is unnecessary to enter into a discussion of the vexing and technical rules relating to covenants running with land, for we are of opinion that a court of equity should not exert its coercive powers under the situation presented in this case, irrespective of whether the provisions of the deed from Reece Browning to Cole and Crane be considered technical covenants running with the land, or as instances of that general class of restrictive covenants or equitable servitudes, limiting the use of real estate, which bind purchasers who take with notice thereof, whether they fall within the class of such technical covenants or not. The latter question more properly arises in an action at law to recover damages for the violation of such agreements.

Covenants restricting the use of land are frequently incorporated in deeds for the purpose of benefiting land retained by the grantor, or, as in this case, land conveyed to the grantee. Such restrictions are recognized and enforced in courts of equity, even as against subsequent purchasers with notice, when it

clearly appears that the intention of the parties was to limit or restrict the use of one parcel of land for the benefit of another, provided the enforcement of such restrictions will not violate any principle of public policy. It is wholly immaterial whether the restrictions are technically such as "run with the land."

In the leading and pioneer case of *Tulk* v. *Moxhay,* 2 Phillips 774, 776, this question is discussed at length: "It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor and with notice of which he purchased. * * * For if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

The existence and applicability of this rule, without regard to the question whether or not the covenant runs with the land, has heretofore been recognized by this court in the case of *Robinson* v. *Edgell,* 57 W. Va. 157, and the general proposition is so well settled that only a few additional authorities need be cited. 2 Tiffany, Real Property (2d Ed.), § 394, and cases cited at page 1425, note 1a; 4 Pomeroy's Equity Jurisprudence (4th Ed.) § 1693, and cases cited at page 3956, note 10; *Weigman* v. *Kusel,* 270 Ill. 520; *Wootton* v. *Seltzer,* 83 N. J. Eq. 163, affirmed in 84 N. J. Eq. 207; *Brown* v. *Huber,* 80 Oh. St. 183; *Parker* v. *Nightingale,* 6 Allen (Mass.) 341; *Evans* v. *Foss,* 194 Mass. 513; *Trustees* v. *Lynch,* 70 N. Y. 440. In the last case cited the court said: "It is strenuously urged, in behalf of the defendants and respondents, that there was no privity of estate between the mutual covenantors and covenantees in respect of the premises owned by them respectively, and which were the subjects of the covenants and agreements, and that the covenants did not therefore run with the lands, binding the grantees, and subjecting them to a personal liability thereon. This may be conceded for all the purposes of this action. It is of no importance whether an action at law could be maintained against the grantees of Beers, as upon a covenant running with

the land and binding them. Whether it was a covenant running with the land or a collateral covenant, or a covenant in gross, or whether an action at law could be sustained upon it, is not material as affecting the jurisdiction of a court of equity, or the right of the owners of the dominant tenement to relief upon a disturbance of the easements. * * * An owner may subject his lands to any servitude, and transmit them to others charged with the same; and one taking title to lands, with notice of any equity attached thereto, or any outstanding right or claim affecting the title or the use and enjoyment of the lands, takes subject to such equities, and such right or claim, and stands, in the place of his grantor, bound to do or forbear to do whatever he would have been bound to do or forbear to do." (pages 448-449). That was a case where adjoining owners of land in a city covenanted, each with the other, not to use their property for school, factory or business purposes.

It is unnecessary to discuss fully the exact nature of the right created in equity by these restrictive covenants. By some courts they are termed equitable easements; by others, servitudes. In some the right created is treated as contractual in its nature; in others, they are expressly recognized and protected as property rights. This court in the recent case of *Withers* v. *Ward,* not yet reported, has intimated that the latter is perhaps the real nature and characteristic of such restrictions. An extreme application of the property theory is found in the recent case of *Riverbank Improvement Co.* v. *Chadwick,* 228 Mass. 242, which holds unconstitutional a statute providing the procedure whereby a property owner, whose land is subject to the burden of equitable restrictions limiting the use or manner of using his land, may, upon paying the ascertained amount of damages which will result to the person or property entitled to the benefit of such restrictions by reason of the non-enforcement of the same, have the title to his property registered free from restrictions; the court's decision being based upon the ground that, even though payment of full compensation is guaranteed, this is a taking of property for private purposes without the consent of the owner, and therefore in violation of the Declaration of Rights.

But whatever the nature of the right, when the parties by their contract have created an equity which attaches to the property, limiting its enjoyment in favor of another parcel, and pro tanto enlarging the enjoyment of the latter, such equity, like all others, will bind a purchaser who takes the legal title with notice thereof; at least until the surrounding circumstances and conditions have so changed as to render nugatory, ineffectual and inequitable any further enforcement thereof. *Robinson* v. *Edgell*, 57 W. Va. 157. Tiffany in his work on Real Property (2d Ed.), vol. 2, § 396, p. 1437, likens this right to demand equitable enforcement of restrictive covenants to that by which the equitable right to specific performance of a contract is enforced against a subsequent holder of the property, not a bona fide purchaser for value, as well as to the doctrine that a trust may be enforced against a purchaser from the trustee under like circumstances.

In 2 Pomeroy's Equity Jurisprudence (4th Ed.), § 688, the author says: "The full meaning of this most just rule (that one who takes with notice of an equity takes subject to that equity) is, that the purchaser of an estate or interest, legal or equitable, even for a valuable consideration, with notice of any existing equitable estate, interest, claim, or right, in or to the same subject-matter, held by a third person, is liable in equity to the same extent and in the same manner as the person from whom he made the purchase; his conscience is equally bound with that of his vendor, and he acquires only what his vendor can honestly transfer."

And again from section 689 we quote: "On the same principle, if the owner of land enters into a covenant concerning the land, concerning its use, subjecting it to easements or personal servitudes, and the like, and the land is afterwards conveyed or sold to some one who has notice of the covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained from violating it; and it makes no difference whatever, with respect to this liability in equity, whether the covenant is or is not one which in law 'runs with the land.'" See also *Weigman* v. *Kusel*, 270 Ill. 520; *Wootton* v. *Seltzer*, 83 N. J.

Eq. 163; *Brown* v. *Huber,* 80 Oh. St. 183; *Trustees* v. *Lynch,* 70 N. Y. 440.; *McMahon* v. *Williams,* 79 Ala. 288.

In an early Massachusetts case, *Parker* v. *Nightingale,* 6 Allen 341, 345, the court said: "A purchaser of land with notice of a right or interest in it existing only by agreement with his vendor, is bound to do that which his grantor had agreed to perform, because it would be unconscientious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to the estate, of which he had notice when he became the purchaser. In such cases it is true that the aggrieved party can often have no remedy at law. There may be neither privity of estate nor privity of contract between himself and those who attempt to appropriate property in contravention of the use or mode of enjoyment impressed upon it by the agreement of their grantor, and with notice of which they took the estate from him. But it is none the less contrary to equity that those to whom the estate comes, with notice of the rights of another respecting it, should wilfully desregard them, and in the absence of any remedy at law the stronger is the necessity of affording in such cases equitable relief, if it can be given consistently with public policy, and without violating any absolute rule of law."

And the authorities are uniform in holding that actual notice of the restriction is not essential, but that constructive notice is sufficient. 4 Pomeroy's Equity Jurisprudence (4th Ed.) § 1704; 2 Tiffany, Real Property (2d Ed.) § 398; *Howland* v. *Andrus,* 80 N. J. Eq. 276; *Weigman* v. *Kusel,* 270 Ill. 520; *Peck* v. *Conway,* 119 Mass. 546; *Smith* v. *Graham,* 161 App. Div. 803, affirmed in 217 N. Y. 655.

But it may be urged that in this case there was no transfer from covenantor to covenantee of the land sought to be burdened with this equity. That is true; but as said in *Weigman* v. *Kusel, supra,* it is not material "that such stipulations should be binding at law, or that there should be privity of estate between the parties in order to warrant equitable relief. Such building restrictions will be enforced in equity upon equitable principles, each case being considered with reference to its own circumstances." Moreover, it is also true that we most frequently meet these equitable restrictions in deeds where the

grantee enters into restrictive covenants respecting the land conveyed to him for the benefit of adjoining land retained by his grantor. But the principle is the same where the grantor covenants to restrict the use of land retained by him for the benefit of land conveyed to his grantee. Both Tiffany and Pomeroy agree upon this proposition, and the cases cited therein support the text. 2 Tiffany, Real Property, (2d Ed.) § 394, p. 1426; 4 Pomeroy's Equity Jurisprudence (4th Ed.) § 1700. This principle was recognized in effect in *Hennen* v. *Deveny,* 71 W. Va. 629, where the owner of a large lot conveyed a portion of it to certain named trustees of a church in trust, to be used as a place of worship, and covenanted with respect to the land retained by him "that no building shall be erected on any part of the land surrounding the above described granted church lot within ten feet of said church lot;" and the court held that the benefit and burden of this restriction passed to the alienees of the respective parties.

In *Wootton* v. *Seltzer,* 83 N. J. Eq. 163, the grantor of land covenanted with his grantee to maintain an open space of 20 feet on land retained by him, and the court in enforcing the restriction for and against their respective alienees, said: "There can be little, if any, difference in principle between a restrictive covenant made by a vendee for the benefit of remaining land of his vendor, and one made by a vendor touching his remaining land for the benefit of his vendee. Both are held to be enforceable by a purchaser of the land for the benefit of which the covenant has been made against a purchaser of the restricted land who is chargeable with notice of the covenant. (citing cases). It is unnecessary to regard such covenants as creative of easements; the equitable right to enforce the covenant is transferable as a part of the land to which it is attached, and may be enforced upon the equitable principle of preventing one having knowledge of the just rights of another from defeating such rights." Similar statements are found in *Brown* v. *Huber,* 80 Oh. St. 183, and *Halle* v. *Newbold,* 69 Md. 265. For other cases where the grantor imposed restrictions upon the use of land retained by him, for the benefit of land conveyed to his grantee, see *Howland* v. *Andrus,* 80 N. J. Eq. 276; *Trustees* v.

*Cowen,* 4 Paige (N. Y.) 510; *Nicoll* v. *Fenning,* L. R. 19 Ch. Div. 258; *Stephen Putney Shoe Co.* v. *Railroad Co.,* 116 Va. 211.

What has been said heretofore in this opinion has been predicated upon an assumption that the nature and purpose of the restrictive covenant, limiting the use of the grantor's property, was in accordance with the policy of the law relating to these matters, and of such a nature as to warrant the creation of an equity binding upon all purchasers except those who bought and paid full value without notice of the encumbrance, and to justify a court of chancery in enforcing it by coercive mandate. Such restrictions generally tend to the physical advantage of the covenantee's property, and as instances thereof there may be cited agreements not to use designated land for building purposes (*Hennen* v. *Deveny,* 71 W. Va. 629), or for other than residence purposes, in a district devoted primarily to such use (*Withers* v. *Ward,* 86 W. Va. 558, 104 S. E. 96) ; agreements not to build within a certain distance of the street; not to erect a building of less than a certain cost, or of a style of construction other than that named in the deed; not to devote land to a particular business obnoxious to that community for other than moral reasons. And closely allied to the class of covenants intended for the physical advantage of the property, is the class intended to maintain or improve the moral tone of the neighborhood, by the exclusion of businesses tending to immorality or disorder (*Robinson* v. *Edgell,* 57 W. Va. 157). Finally, there are agreements whose purpose is to increase the value of the covenantee's land indirectly by preventing the use of the covenantor's land for a competing business. For instances of these various restrictive agreements, see 2 Tiffany, Real Property (2d Ed.) § 395.

The restrictive covenant contained in the deed from Reece Browning to Cole and Crane limited the covenantor and his successors in title to the use of the two acres of surface land "for residence and agricultural purposes only," and bound them "not to conduct or suffer to be conducted on said two acres of surface any mercantile business, and that no intoxicating drinks of any character are to be sold or kept thereon." We are concerned here only with such of the restrictions as seem to prohibit the maintenance and operation of the general mercantile

store and "hot dog" wagon sought to be enjoined in this proceeding.

From an examination of the restrictive covenant, read and considered in the light of the record in this case, it appears that the purpose of Cole and Crane in insisting upon such a provision was to safeguard mining operations for coal purposes on the 154-acre tract against any unlawful obstruction or impediment to the exercise of rights conferred upon them by grant, from any hostile agency that might resort to the two acres or any part thereof; for if such use be permitted, it would afford a convenient loafing place for dissemination of radical and dangerous doctrines. And there may have been the further purpose, though that does not clearly appear, of limiting and restricting the operation of stores selling supplies similar to those sold in the company's five commissaries located at various points in the town of Omar and on the 154 acres.

It is difficult to see how the enforcement of these agreements will accomplish the first purpose intended. If mercantile establishments are forbidden to exist on the two-acre parcel, yet residences and rooming houses are not, and these will be equally open for propagandists to "ply their trade." In addition, there are nine or ten independently owned stores in or near the community, to which access is likewise available, only in a less degree, for the attainment of the same end. There is no allegation or proof tending to show that the establishments maintained by defendants are disorderly or otherwise obnoxious.

On the other hand, there is but little, if any, doubt that a decree restraining defendants would operate to the financial gain of the company's commissaries, for defendant Hindy states in his affidavit that during the six months he has been conducting his store, his business has amounted to $18,000. And assuming an intention, though it does not clearly appear, on the part of Cole and Crane to eliminate, by means of the restrictive covenant, possible future competition of this character, some courts have declined to recognize and enforce, as equitable servitudes, binding upon all not bona fide purchasers for value, restrictions of unlimited duration which do not tend to the physical advantage of the covenantee's land except by the possible indirect in-

crease of its value by preventing the use of adjoining property for a competing business. In the case of *Norcross* v. *James,* 140 Mass. 188, the owner of a quarry conveyed it to another and covenanted for himself and successors in title not to open or permit to be opened any quarry on his remaining land. Through mesne conveyances both properties passed into other hands, and the alienee who took the property subject to the restriction opened a quarry in disregard thereof, and the court refused to enjoin him, saying, page 192: "In what way does it extend to the support of the plaintiff's quarry? It does not make the use or occupation of it more convenient. It does not in any way affect the use or occupation; it simply tends indirectly to increase its value, by excluding a competitor from the market for its products. If it be asked what is the difference in principle between an easement to have land unbuilt upon, * * * and an easement to have a quarry left unopened, the answer is, that, whether a difference of degree or of kind, the distinction is plain between a grant or covenant that looks to direct physical advantage in the occupation of the dominant estate, such as light and air, and one which only concerns it in the indirect way which we have mentioned." See to the same effect *Brewer* v. *Marshall,* 18 N. J. Eq. 337.

On the other hand, in a case involving substantially similar facts, the New York Court of Appeals has reached an opposite conclusion. N was the owner of certain land containing deposits of building sand, and the sale of the sand constituted his only business. Yielding to the importunities of S who desired to buy part of his land, N sold to him a portion thereof upon S's express covenant not to sell any sand from the parcel conveyed. Subsequently conveyed the parcel to defendant, who had notice of the restriction, but in violation thereof the latter opened a pit and sold sand therefrom. The court held that a suit was maintainable to enjoin such use by the vendee. *Hodge* v. *Sloan,* 107 N. Y. 244. And in 2 Tiffany, Real Property (2d Ed.) § 395, the author expresses the view that if the agreement is valid between the original parties thereto, the fact that its chief effect is to restrain competition is hardly a sufficient reason for

permitting a subsequent purchaser with notice of the agreement to use the land in contravention thereof.

Which of these two views we would be disposed to adopt it is unnecessary to say, for, as will appear more clearly later from the averments of the bill itself, the intention of the covenantee apparently was to achieve the first purpose mentioned above, and not to eliminate potential competitors of the company's commissaries.

As personal covenants between the original grantor and grantee, the restrictions thus imposed may have been valid and enforceable; but to give them the force of equities binding and restricting the use of land indefinitely, no matter into whose hands the properties pass, provided the alienees take with actual or constructive notice, is a matter of material difference. Great latitude has been accorded by courts to property owners with respect to the restrictions which they are permitted to impose upon the use of adjoining or neighborhood property. But, as noted above, the limitations ordinarily tend toward the physical or moral advantage of the property itself, either by way of improving the appearance of the neighborhood or district in which the property is situated, or by way of preventing the entry of noisy, disorderly or otherwise obnoxious businesses or establishments into a quiet and orderly section. And it must always be borne in mind that any doubts as to the purpose, propriety or validity of restrictions limiting the use of property are resolved in favor of its free and unrestricted use by the vendee.

The restrictions imposed in this case go a step farther than those mentioned above. Unlike those involved in *Withers* v. *Ward,* they do not concern a distinct residential section of the town of Omar—in fact that town has largely developed since the creation of these restrictions—nor does it appear that the primary purpose was to improve residential conditions in the immediate vicinity. But, as indicated above, the restrictions tended only indirectly to the physical or moral advantage of the covenantee's property. They were placed in the deed, the bill informs us, for the reason "that in all mining operations it is essential and more conducive to the welfare of the miners and other employees, and to the effective maintenance of an

organization for the proper mining of coal, that the operators should have supervision and control, so far as possible, of the territory upon which its mining operations, including miners' houses, commissaries, etc., are situate, in order to prevent undesirable persons from locating in close proximity thereto."

The purpose thus disclosed is to prevent the presence of mercantile establishments, not because other forms of business are per se obnoxious, but because of the class of people who perchance may congregate there. The motive is unquestionably proper, though sometimes subject to abuse, and as a personal covenant may have been binding upon the original parties thereto. But resolving all doubts in favor of the continued free use of property, unencumbered by restrictions, as by legal and equitable principles we must, we are of opinion that a court of chancery should not lend its coercive power to enforce such restrictions as equitable property rights against subsequent alienees.

For these reasons, our order will reverse the decree of the court below, dissolve the injunction, and dismiss the bill.

*Reversed, injunction dissolved, and bill dismissed.*