HOWARD BENNETT *and* LILLIAN L. BENNETT

*v.*

THE CHARLES CORPORATION, *a corporation*, C. RUSSELL LEWIS *and* MARGARET LOUISE MARKHAM

(No. 13586)

Decided July 20, 1976.

*J. Ross Hunter, Jr., F. Duane Hill* for appellants.

*Fred M. Frisk, Jr., Sam D. Lopinsky* for appellees.

FLOWERS, JUSTICE:

This appeal from a judgment of the Circuit Court of Kanawha County involves the enforceability of certain restrictions upon the use of a tract of land. The plaintiffs, Howard Bennett and Lillian L. Bennett, owners of a dwelling house within a subdivided tract, sought to enjoin the defendants who are the owners of the remaining lots in the tract from converting those lots into a cemetery and from using them for other than residential purposes. The plaintiffs also sought additional mandatory relief requiring the defendants "to remove any graves [*sic*] in said subdivisions" and to pay ten thousand dollars damages and costs.

The equitable relief sought was awarded by the Common Pleas Court of Kanawha County. The Circuit Court refused to entertain an appeal on the ground that, following the adoption of the Judicial Reorganization Amendment in 1974, appellate relief could only be grant-

ed by this Court. The defendants were then granted an appeal here from the adverse judgment.

The most significant issues confronting us involve: (1) Whether the defendants by oral representation at the time of the sale of the property to the plaintiffs created an equitable negative easement which is enforceable; and (2) whether the defendants are bound as subsequent purchasers with notice by restrictive testamentary language in a devise of the property to their predecessors in title.

James M. Curry died testate in 1941 and by his will, probated and placed of record more than twenty years prior to the conveyance to the defendants, devised the residue of ten acres of real estate to his sons, F. I. Curry and J. C. Curry. The will contained the following language:

> " ... It is my desire and I hereby direct that hereafter there shall not be sold or used for cemetery purposes or for the burial of the dead any additional part of the said tract and parcel of ten acres land, except that part now fenced and enclosed as a cemetery.

> "I further direct that the proceeds from the sale of any and all cemetery lots included in the three to four acres hereinbefore mentioned, and enclosed by fence as above described, shall be paid to and become the money and property of my two sons E. R. Curry and W. B. Curry, to be used by them in the payment of the taxes, insurance, upkeep and other expenses up on the real estate hereinbefore bequeathed to them jointly."

The devisees, F. I. Curry and J. C. Curry, subsequently partitioned the six to seven acres left them from the ten-acre tract. The portion received by F. I. Curry was platted in 1954 as the "F. I. Curry subdivision." The plat showed a separation of lots into two blocks divided by a street. That portion east of the street, containing 12 lots, was designated as "Block A", while the portion west of

the street, containing 13 lots, was designated as "Block B".

No lots were sold while F. I. Curry owned the property. The entire tract was purchased in 1964 by Clyde Eplin and The Charles Corporation who together constructed two houses on the portion of the tract designated as Block B. One of the houses was leased for six months and then sold to the plaintiffs by a deed, dated September 1, 1965. The deed described the property as "Lot No. Three (3) of the F. I. Curry Subdivision to Marmet" and made reference to the plat "for aid in the description and identification of the property." Neither the deed nor the plat contained restrictive covenants of any nature. It was undenied, however, that the sellers intended, and so represented to the plaintiffs through Eplin and a real estate agent, that the subdivision would be a residential development and that additional houses would be built. The defendants objected to the introduction of parol evidence to vary the terms of the deed and plat, contending that a servitude upon the defendants' lands could be created only by a writing which met the requirements of *W. Va. Code*, 36-1-1 and 36-1-3.

After negotiation of the sale of the property to the plaintiffs, Eplin became ill. He moved into the other house he had built in Block B near the Bennetts and sold his interest in the land to The Charles Corporation. The defendant Lewis, who was President of The Charles Corporation, testified that in late 1969 or early 1970 he found he could not develop Block A as a residential housing area because of difficulties obtaining a sewage line. He then decided to clear the land and develop it as a cemetery.

After learning of the proposed cemetery development, the plaintiffs accepted a deed for a portion of the additional half of a lot adjacent to their dwelling which they had agreed to purchase in 1965. This second deed, like the first, contained no restrictions on use.

In February, 1972, a cemetery plat was recorded and a lot was sold to Mr. and Mrs. William Howard Markham. The Markham lot was located in the center of the original Block A. In April, 1972, William Howard Markham was buried there. It was acknowledged that the Markham gravesite was no closer to the plaintiffs' property than the two established cemeteries which broder on the subdivision perimeter. The plaintiffs nevertheless claimed their property was diminished in value by the establishment of the new cemetery.

A civil action was filed by the Bennetts in April, 1972, naming as defendants, The Charles Corporation, C. Russell Lewis, and Margaret Louise Markham, widow of William Howard Markham. Mrs. Markham filed a third-party complaint against The Charles Corporation and Lewis.

The court found that the plaintiffs would not have purchased the property from The Charles Corporation had they been aware that a portion of the subdivision would be used for a cemetery. Upon this finding the court determined that an implied covenant arose upon the sale of the property to the Bennetts, warranting that the property would not be used for cemetery development and would be used solely for residential purposes. The trial court ordered that an injunction should issue enjoining the defendants from developing the property as a cemetery and requiring defendant Markham to remove her husband's body within 60 days. Upon her failure to do so, the plaintiffs were extended the right to remove the body to a suitable resting place.

Thereafter, upon motion of counsel for the plaintiffs, the court admitted as after-discovered evidence the will of James M. Curry and affirmed its prior ruling.

I

The initial question presented for decision involves whether the events surrounding the sale of property in the subdivision to the Bennetts support injunctive enforcement of an oral negative restrictive easement

against the property identified as "Block A". Easements may be classed as affirmative or negative. When the effect of the restriction sought is to preclude an owner of land from doing something he otherwise would be entitled to do, it is considered a negative easement. 25 Am. Jur. 2d *Easements and Licenses* §8, pp. 422-23; *Cottrell v. Nurnberger*, 131 W. Va. 391, 397–98, 47 S.E.2d 454, 457 (1948). Negative restrictive easements are basically restrictive covenants[1] which are equitably enforceable. 2 G. Thompson, Real Property, §382, p. 540 (1961); 25 Am. Jur. 2d *Easements and Licenses* §5, p. 421.

Though the terms "easement" and "servitude" are often used indiscriminately the one is usually applied to the right enjoyed while the other refers to the burden imposed. *Cottrell v. Nurnberger, supra* at 397, 47 S.E.2d at 457.

An easement, whether affirmative or negative, is an incorporeal hereditament and as such is a species of real property or land subject to the provisions of the statutes governing the conveyance or creation of estates in land. *W. Va. Code*, 36-1-1, and the Statute of Frauds, *W. Va. Code*, 36-1-3. *Cottrell v. Nurnberger, supra* at 397, 47 S.E.2d at 457.

The deed to the plaintiffs did not create the negative easement, nor did the plat or any other writing meet the requirements of the Statute of Frauds, *W. Va. Code*, 36-1-3. Whether the will of James M. Curry created such an easement is dealt with hereafter.

While there are limited instances in which an easement has been held to "arise from estoppel" or where the owner against whose land an easement is sought

---

[1]"Restrictive covenants, as to the use of land ... have been said to create easements.

" ... When negative in character ... such covenants are ... sometimes characterized, reciprocal negative easements, mutual, reciprocal, equitable easements of the nature of servitudes, or merely negative easements, or 'equities' in favor of the adjoining land." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* §166, pp. 724-25.

may be estopped from asserting the Statute of Frauds as a defense, we think such exceptions were ably dealt with in *Cottrell* and the decision in that case is controlling here.

In *Cottrell* the plaintiffs sought to enjoin the construction of a motel on a lot in a subdivision which had been used for recreational purposes. The plaintiffs' case for equitable relief was based upon the theory that they had purchased their lots, paying a higher price, and built homes because of the representation of the developer that Lot 45 would be preserved for recreational purposes.

The Court found that oral restrictions upon the use of land were easements falling within the provisions of *W. Va. Code*, 36-1-3, and *W. Va. Code*, 36-1-1, which require a writing, deed or will and prohibit the creation of easements by parol. The decision, however, recognizes that a defendant may be estopped to assert the Statute of Frauds in defense of an action for enforcement where certain limited circumstances exist. Those limited situations include fraud and part performance.

In defining the conduct which would raise an equitable estoppel, the Court distinguished between a representation and a promise, holding that a broken promise did not provide a sufficient basis upon which to predicate fraud.

Moreover, payment of the purchase price, although excessive, was not of itself part performance; neither would improvement of the purchased lots remove the agreement from the operation of the statute. The Court did not consider as persuasive the recorded map on which Lot 45 was shown without any legend to signify that it was reserved or dedicated to a particular purpose.

The principles of *Cottrell* are in accord with the weight of authority. In 2 G. Thompson, Real Property, §333, p. 12 (1961 Supp.) it is stated:

"For an oral conveyance of an easement to be effective there must be: (1) conduct of the parties clearly evidencing the agreement sufficient to avoid the statute of frauds under the minimization of perjured claims theory and (2) equitable circumstances establishing a true estoppel or avoidance of unjust enrichment."

The following appears in 5 R. Powell, *The Law of Real Property*, ¶672, pp. 152-53 (1975):

" ... Most courts frankly recognize that the promise has to be in writing in order to satisfy the Statute of Frauds, and dispense with a writing only on the equitable principles of estoppel or part performance generally applicable to create exceptions to the Statute of Frauds."

The conflict in decisions on this issue results generally from the consideration of what conduct results in estoppel to assert the Statute of Frauds as a defense. This conflict is evident upon comparison of the majority and dissenting opinions in *Cottrell*. Powell in his treatise comments:

" ... The extension of this doctrine of estoppel to oral representations involving only a promise has caused some judicial hesitance. Some courts have refused such an extension. Other courts retain lip service to the doctrine of estoppel by finding a misrepresentation of fact in the promise read in its circumstances. Other courts swallow the 'promissory estoppel' without a gulp, and give effect in equity to oral promises that retained lands will be subjected to restrictions and to other oral promises respecting the use of land, without attempting to find the 'representation of fact' traditionally necessary for an estoppel in pais. This liberality is particularly common where land has been subdivided and a plat has been recorded ...." 5 R. Powell, *The Law of Real Property*, ¶672, pp. 153-54 (1961).

The facts of the instant case are compatible with those in *Cottrell,* and the circumstances of this case do not warrant a departure from that decision. The map merely subdivided the tract into lots and did not dedicate any of the lots in Block A to residential housing. The oral expression of intention made to the Bennetts at the time of sale constituted at most a promise to develop the tract in the future as a residential housing subdivision. When the defendant found it impossible to perform according to this promise, the use of the tract was changed. The basis of equitable estoppel is fraudulent or inequitable conduct. The acts of the defendant in the instant case do not rise to that level. No fraud can be gleaned in these circumstances from the breach of an oral promise to dedicate land to a particular use. The conclusion expressed by Judge Haymond in *Cottrell* we think is relevant here:

> " ... The mere failure or refusal of the vendor in an oral agreement, which is within the Statute of Frauds and for that reason unenforceable, to recognize it as binding or to comply with it does not in itself amount to fraud or inequitable conduct upon which to base estoppel, when, as here, it does not appear that he intended to violate the oral agreement when it was made. In refusing to perform it he is simply exercising a statutory right. The other party to the contract is presumed to know that the contract is unenforceable and that he acts under it at his risk. To regard otherwise the acts of the parties to a contract within the statute would be to disregard the statute and to refuse to give it force or effect." *Cottrell v. Nurnberger, supra* at 406-07, 47 S.E.2d at 461–62.

The Statute of Frauds has been a part of our law for three hundred years. Its purpose is the prevention of fraud and perjury. *Smith v. Morton,* 70 Okl. 157, 173 P. 520 (1918). Its need is as pressing today as at its origin. If we were to sanction the substitution of verbal declarations for written instruments in the creation and

transfer of estates in land, we would defy the experience of time. The Statute protects against the fallibility of man's memory and insures certainty in land transactions. While it must never be an instrument of the fraud which it was intended to prevent, the Statute cannot be ignored or circumvented in order to achieve what may be a more desirable result for one of two litigants. *Cottrell v. Nurnberger, supra* at 411, 47 S.E.2d at 464.

## II

The second determination in this case requires a consideration of the effect of the will of James M. Curry upon the tract of land devised to the parties' predecessor in title. The will provided that: "it is my desire and I hereby direct" that no portion of the tract of land be used or sold for "cemetery purposes or for the burial of the dead." The will was admitted as after-discovered evidence. No error in this regard was assigned by the defendants.

The effect to be given the will requires a determination of the interest created by the testamentary language. Several types of interest may have been created, including (1) a fee simple determinable; (2) a fee simple subject to a condition subsequent; (3) a negative restrictive easement; and (4) a personal restriction for the benefit of the testator's devisees and legatees which confers no special rights or burdens upon their successors in title.

The determinable fee and fee subject to condition are estates which terminate or are subject to divestment upon the happening of a named event or condition. *Woman's Club of St. Albans v. James,* _____ W. Va. _____, 213 S.E.2d 469 (1975); *Security National Bank & Trust Co. v. Willim,* 153 W. Va. 299, 168 S.E.2d 555 (1969). Characteristic of the creation of the former estate is the use of words such as "so long as" or "until." 1 L. Simes and A. Smith, The Law of Future Interests, §286, p. 341 (2nd ed. 1956); *Woman's Club of St. Albans v. James, supra.* Fees subject to divestment upon the occurrence of a

condition subsequent are ordinarily indicated by the use of language such as "upon condition that" or "in the event that". 28 Am. Jur. 2d *Estates* §144, pp. 259-60. In the instant case, the testator did not employ the language of either category. Moreover, if we were to construe the provision as creating one of the two estates, the rights and benefits resulting from the occurrence of the event would benefit the heirs of the testator and not the plaintiffs. *Woman's Club of St. Albans v. James, supra.*

A third possible construction would be that the language creates a negative restrictive easement. Such easements arise upon the separation of a tract of land into dominant and servient estates. *Cottrell v. Nurnberger, supra* at 397, 47 S.E.2d at 457. The plaintiffs, however, cannot demonstrate that their lot constitutes a part of the dominant estate which might be benefited by the restriction in the will. Whether the other Curry brothers who were devised adjoining property could have claimed the F. I. and J. C. Curry devise was a servient estate to their devise is of no avail to these plaintiffs.

Restrictive easements upon the use of land are basically covenants implying mutuality or agreement as a protection to the dominant estate. It has been stated that: "The creation of an easement by devise, which occurs but infrequently, may be considered as one phase of the creation of easements by grant." 3 H. Tiffany, Real Property, §776, p. 245 (3rd ed. 1939). This textual statement refers to the creation of a legal easement. It is difficult to imagine a situation in which a restrictive covenant could be created by a testamentary document. We are not, however, required to make such a determination in this case. A person claiming a right under a restrictive negative easement must show that the advantage to be derived from the restriction is a benefit to the land. *Cole v. Seamonds*, 87 W. Va. 19, 104 S.E. 747 (1920). Such a benefit cannot be shown in the instant case.

The property owned by James M. Curry at his death was used in part to maintain a public and a private family cemetery. He devised a portion of his property to his sons E. R. Curry and W. B. Curry. He devised a second portion, excepting therefrom the fenced area dedicated as a public cemetery, to his sons, J. C. Curry and F. I. Curry. In addition, he bequeathed to E. R. Curry and W. B. Curry the proceeds from the sale of any cemetery lots in the fenced areas, excepted from the devise to J. C. Curry and F. I. Curry, for the purpose of paying taxes, insurance and upkeep on the portion of the property devised to them.

It is apparent that the restrictive directive in the will of James M. Curry resulted from his desire to prevent competition among his sons and to ensure some income for the protection of the property on which he had maintained his residence. The restriction may have been enforceable between the original devisees. Equity will not, however, enforce a restriction against subsequent purchasers which is personal to the grantor. *Cole v. Seamonds, supra.*

### III

The final question presented for decision is whether the circuit court erred in failing to entertain an appeal of this case. Under prior statutes the circuit court of a county was vested with appellate jurisdiction over cases decided by courts of limited jurisdiction within that county. With the ratification of the Judicial Reorganization Amendment, however, courts of limited jurisdiction automatically became circuit courts. At the time of application for appellate relief in this case the common pleas court had been reconstituted under the Amendment as the Circuit Court of Kanawha County. Appellate relief, therefore, could only be granted by this Court.

For reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County is reversed.

*Reversed.*